# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

NANCY CAROLA JACOBSON,
TERENCE FLEMING, SUSAN
BOTTCHER, PRIORITIES USA, DNC
SERVICES CORPORATION /
DEMOCRATIC NATIONAL
COMMITTEE, DSCC a/k/a
DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE, DCCC a/k/a
DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE,
DEMOCRATIC GOVERNORS
ASSOCIATION, and DEMOCRATIC
LEGISLATIVE CAMPAIGN
COMMITTEE,

    Plaintiffs,

v.

KENNETH DETZNER, in his official
capacity as the Florida Secretary of State,

    Defendant.

Case No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, NANCY CAROLA JACOBSON, TERENCE FLEMING,

SUSAN BOTTCHER, PRIORITIES USA, DNC SERVICES CORPORATION /

DEMOCRATIC NATIONAL COMMITTEE (the "DNC"), DSCC a/k/a

DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE (the "DSCC"),

DCCC a/k/a DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE

(the "DCCC"), DEMOCRATIC GOVERNORS ASSOCIATION (the "DGA"),

and the DEMOCRATIC LEGISLATIVE CAMPAIGN COMMITTEE (the

1

"DLCC"), file this Complaint for Declaratory and Injunctive Relief against Defendant KENNETH ("KEN") DETZNER, in his official capacity as the Florida Secretary of State, and allege the following grounds for their entitlement to relief:

## NATURE OF THE CASE

1.      It has been well-established, and there is ample evidence, that the candidate listed first on a ballot attracts additional votes *solely* due to his or her position on the ballot. *See, e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980) (affirming "district court's finding of ballot advantage in the first position"); *Akins v. Sec'y of State*, 154 N.H. 67, 71 (N.H. 2006) (affirming trial court finding that "the primacy effect confers an advantage in elections"); *Gould v. Grubb*, 14 Cal. 3d 661, 664 (1975) (describing trial court's finding of position bias as "consistent with parallel findings rendered in similar litigation throughout the country"); *Holtzman v. Power*, 62 Misc. 2d 1020, 1023 (N.Y. Sup. Ct. 1970) (noting the belief "that there is a distinct advantage to the candidate whose name appears first on a ballot . . . appears to be so widespread and so universally accepted as to make it almost a matter of public knowledge"). This phenomenon is known as "position bias."[1]

2.      Florida law mandates that candidates of the political party of the Governor be listed first on the ballot. FLA. STAT. § 101.151(3)(a) (2017) (the

---

[1] "Position bias" is also referred to as the "primacy effect," "windfall vote," or "donkey vote."

"Ballot Order Statute") ("The names of the candidates of the party that received the highest number of votes for Governor in the last election in which a Governor was elected shall be placed first for each office on the general election ballot, together with an appropriate abbreviation of the party name[.]"). As a result, candidates of the Governor's political party receive the benefits of position bias, creating an unfair and artificial electoral advantage. Currently, Republican Party candidates routinely and without exception receive the advantage of position bias in Florida's partisan elections, because the Governor, Rick Scott, is a Republican. Because a Republican has held the position of Florida Governor for twenty years, this advantage has continued, unabated, for two decades.

3.     The first-listed candidates in partisan general elections in Florida receive the following average percentage point electoral "bump" due to position bias: (1) Republican candidates gain a 2.70 percentage point advantage by being listed first on the ballot; and (2) Democratic candidates gain a 1.96 percentage point advantage by being listed first. These numbers are both statistically and electorally significant: Florida's recent history is littered with examples of elections that were decided by smaller margins. But the numbers also *underestimate* the effect of the bias. In any given election, the total overall percentage point gap that may be attributable to position bias includes not just the percentage points *gained* by the candidate whose name appears first on the ballot

solely due to his or her position on the ballot, but also the points *lost* by the candidates who do not appear first, for no reason other than the fact of their position on the ballot. The overall percentage point gap attributable to position bias between the first and second listed candidates in Florida's two-party, two-candidate elections is estimated to be as high as 5.40 percentage points when Republican Party candidates are listed first, and 3.92 percentage points when Democratic candidates are listed first.

4.    Thus, as a direct result of Florida's Ballot Order Statute, Plaintiffs, Democratic Party committees, Democratic candidates, Democratic organizations, and voters who support Democratic candidates, have been—and, absent Court action declaring and enjoining the Statute as unlawful, will continue to be—irreparably and seriously injured by the invisible thumb that the Statute puts on the scale in favor of Republican candidates in all of Florida's partisan elections.

5.    At its most basic, the Ballot Order Statute injures the Democratic Party and its candidates, as well as the voters and organizations that support them, by treating them differently from the Republican Party and its candidates, solely because the Republican candidate for Governor won the last gubernatorial election—an election entirely unrelated to all of the other elections in which Republican candidates are accordingly and arbitrarily awarded a several point advantage as the result of position bias. The Ballot Order Statute also dilutes the

vote of Floridians, such as Plaintiffs Jacobson, Fleming, Bottcher (collectively, the "Voter Plaintiffs"), and the voting members and voting constituents of the Democratic Party committee Plaintiffs and Democratic organization Plaintiffs, all of whom consistently support Democratic candidates in Florida elections, by giving an artificial and unfair advantage to candidates of the Governor's political party. The resulting disparate treatment and burden on Plaintiffs' right to vote are not justified by any legitimate, much less compelling, state interest.

6.     In the only case in which the Supreme Court has considered a challenge to a state practice that would have given certain types of candidates (there, incumbents) the advantage of being placed first on the ballot and the benefits of position bias, the Court summarily affirmed the lower court's preliminary injunction, requiring candidates to have an equal opportunity to be placed first on the ballot. *See Mann v. Powell*, 333 F. Supp. 1261 (N.D. Ill. 1969), *aff'd* 398 U.S. 955 (1970); *see also Gould*, 14 Cal. 3d at 677 ("[A] fundamental goal of a democratic society is to attain the free and pure expression of the voters' choice of candidates . . . [,] untainted by extraneous artificial advantages imposed by weighted procedures of the electoral process."). The application of Florida's Ballot Order Statute in the upcoming November 2018 election is even less justifiable than the incumbency preference enjoined in *Mann*, because the Florida Statute determines the order of names on a ballot based on a single, *unrelated*

election that occurred four years ago, which involved *different* candidates for a *different* elected position.

## JURISDICTION AND VENUE

7.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

8.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States.

9.     This Court has personal jurisdiction over the Defendant, the Secretary of State, who is sued in his official capacity only.

10.     Venue is proper in the Gainesville Division of the U.S. District Court in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because, *inter alia*, a substantial part of the events that gave rise to Plaintiffs' claim occurred there.

11.     This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     All conditions precedent to the maintenance of this case and Plaintiffs' claims have occurred, been performed, or otherwise been waived.

## PARTIES

13.     Plaintiff NANCY JACOBSON is a resident and registered voter of the State of Florida. She has been a resident of, and registered voter in, Orlando since 1984. Ms. Jacobson has also been a registered Florida Democrat since 1984. She is currently a member of the Orange County Democratic Party, previously served in leadership roles for the Florida Democratic Party, and served as an elected DNC Member from 2008 to 2016. Ms. Jacobson regularly votes in Florida elections and has voted consistently for Democratic Party candidates since 1984. In each election in which she has voted for Democratic Party candidates since 1999, the Republican Party candidate was listed in the top spot on the ballot, due to the Ballot Order Statute's requirement that the candidate of the party of the Governor be listed first in partisan races. Many of the Democratic Party candidates for whom Ms. Jacobson voted, including Democratic presidential candidate Secretary of State Hillary Rodham Clinton in 2016, gubernatorial candidate Charlie Crist in 2014, and gubernatorial candidate Alex Sink in 2010, lost to the Republican Party candidate by less than 2.70 percentage points, well within the margin of electoral advantage that inures to Republican Party candidates in Florida elections purely as a result of being listed first on the ballot pursuant to the Ballot Order Statute. Ms. Jacobson intends to vote for Democratic Party candidates in the upcoming 2018 general election. If the Court does not enjoin the Ballot Order Statute prior to the

upcoming November 2018 election, Republican Party candidates will once again be listed in the first position on the ballot in all partisan races in which Ms. Jacobson will be voting, and they will continue to receive an artificial and unfair advantage purely as a result of their position on the ballot. As a result, Ms. Jacobson will, once again, suffer serious, irreparable injury as a result of the Ballot Order Statute, both due to the dilution of her vote and the burden on her efforts to help elect Democratic Party candidates. Her meaningfully and thoughtfully cast vote for Democratic Party candidates in the 2018 election will be diluted relative to the votes for Republican Party candidates, as it has been in previous elections, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates will be increased—by the windfall votes accruing to Republican Party candidates solely due to their first position on the ballot. Ms. Jacobson has also been actively engaged in efforts to help elect Democratic Party candidates in Florida—efforts which the Ballot Order Statute makes significantly more difficult. Specifically, she has phone banked, canvassed, engaged in get-out-the-vote ("GOTV") activities, served as a poll watcher on election day, and raised money for Democratic candidates, all with the goal of helping Democratic Party candidates win elections in Florida. She plans to continue these activities in regard to the upcoming 2018 general election. Ms. Jacobson is currently volunteering and fundraising for the Democratic Party

candidate running in Florida House District 47, Anna Eskamani. The Ballot Order Statute, if it is not enjoined, will burden Ms. Jacobson's ability to engage in effective efforts to elect Democratic Party candidates by requiring substantially more time and resources to achieve her mission.

14.    Plaintiff TERENCE ("TERRY") FLEMING is a resident and registered voter of the State of Florida. Mr. Fleming moved to Florida from California in 1997. He has been a resident of, and registered voter in, Alachua County since 1998. Mr. Fleming has also been a registered Florida Democrat since 1998. Mr. Fleming has actively participated in local, statewide, and national Democratic politics since 2002. In particular, he has been a member of the Alachua County Democratic Executive Committee since 2002 and served as the state committeeman for the Alachua County Democrats from 2008 until 2017 and from 2018 to the present. He has also been an active member of the Florida LGBTA Democratic Caucus since 2002. Mr. Fleming served in a variety of positions in the Florida LGBTA Democratic Caucus from 2002 until 2015—including regional director, parliamentarian, and vice president—and since 2015, he has been president of the Florida LGBTA Democratic Caucus. Mr. Fleming was also an appointed member of the DNC Platform Committee for the national convention in 2008 and was a delegate to the national Democratic Convention for Hillary Clinton in 2016. Beyond his activism, Mr. Fleming regularly votes in Florida elections and

has voted consistently for Democratic Party candidates since 1998. In each election in which he has voted for Democratic Party candidates since 1999, the Republican Party candidate was listed in the top spot on the ballot due to the Ballot Order Statute's requirement that the candidate of the party of the Governor be listed first in partisan races. Many of the Democratic Party candidates for whom Mr. Fleming voted, including Democratic presidential candidate Secretary Clinton in 2016, gubernatorial candidate Charlie Crist in 2014, gubernatorial candidate Alex Sink in 2010, and Senate candidate Betty Castor in 2004, lost to the Republican Party candidate by less than 2.70 percent points, well within the margin of electoral advantage that inures to Republican Party candidates in Florida elections purely as a result of being listed first on the ballot pursuant to the Ballot Order Statute. Mr. Fleming intends to vote for Democratic Party candidates in the upcoming 2018 general election. If the Court does not enjoin the Ballot Order Statute prior to the upcoming November 2018 election, Republican Party candidates will once again be listed in the first position on the ballot in all partisan races in which Mr. Fleming will be voting and will continue to receive an artificial and unfair advantage purely because of their position on the ballot. As a result, Mr. Fleming will, once again, suffer serious, irreparable injury as a result of the Ballot Order Statute, both due to the dilution of his vote and the burden on his efforts to help elect Democratic Party candidates. Mr. Fleming's meaningfully and thoughtfully

cast vote for Democratic Party candidates in the 2018 general election will be diluted relative to the votes for Republican Party candidates, as it has been in previous elections, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican Party candidates will be increased—by the windfall votes accruing to Republican Party candidates solely due to their first position on the ballot. Mr. Fleming has also been actively engaged in efforts to help elect Democratic Party candidates in Florida, efforts which the Ballot Order Statute makes significantly more difficult. Specifically, Mr. Fleming served as the treasurer for the Kenneth McGurn for U.S. Congress campaign in 2016, volunteered and donated to the Rod Smith for Florida Senate campaign in 2016, and worked on the Kendrick Meek for U.S. Senate campaign in 2010, all with the goal of helping Democratic Party candidates win election in Florida. Mr. Fleming plans to continue to financially support and volunteer to help Democratic Party candidates seeking to win election in Florida in the upcoming 2018 general election. The Ballot Order Statute, if it is not enjoined, will burden Mr. Fleming's ability to engage in effective efforts to elect Democratic Party candidates by requiring substantially more time and resources to achieve his mission.

15.    Plaintiff SUSAN BOTTCHER is a resident and registered voter of the State of Florida. Ms. Bottcher has been a resident of, and registered voter in, Alachua County since 1975. She has also been a registered Florida Democrat since

1975. Ms. Bottcher has been an active participant in local, statewide, and national Democratic politics since 2004, when she volunteered for the John Kerry for President campaign in Alachua County. She served as the state committeewoman for the Alachua County Democrats from 2008 until 2012 and as a delegate to the DNC national convention for Barack Obama in 2008. Ms. Bottcher was also a Gainesville City Commissioner from 2011 until 2014. Currently, Ms. Bottcher is on the state board of Ruth's List of Florida, which recruits, trains, and helps to elect Democratic women to elected office in Florida. Beyond her activism and elected position, Ms. Bottcher also regularly votes in Florida elections and has voted consistently for Democratic Party candidates since 1975. In each election in which she has voted for Democratic Party candidates since 1999, the Republican Party candidate was listed in the top spot on the ballot due to the Ballot Order Statute's requirement that the candidate of the party of the Governor be listed first in partisan races. Many of the Democratic Party candidates for whom Ms. Bottcher voted, including Democratic presidential candidate Secretary Clinton in 2016, gubernatorial candidate Charlie Crist in 2014, gubernatorial candidate Alex Sink in 2010, and Senate candidate Betty Castor in 2004, lost to the Republican Party candidate by less than 2.70 percent points, well within the margin of electoral advantage that inures to Republican Party candidates in Florida elections purely as a result of being listed first on the ballot pursuant to the Ballot Order Statute. Ms.

Bottcher intends to vote for Democratic Party candidates in the upcoming 2018 general election. If the Court does not enjoin the Ballot Order Statute prior to the upcoming November 2018 election, Republican Party candidates will once again be listed in the first position on the ballot in all partisan races in which Ms. Bottcher will be voting and will continue to receive an artificial and unfair advantage purely because of their position on the ballot. As a result, Ms. Bottcher will, once again, suffer serious, irreparable injury as a result of the Ballot Order Statute, both due to the dilution of her vote and the burden on her efforts to help elect Democratic Party candidates. Ms. Bottcher's meaningfully and thoughtfully cast vote for Democratic Party candidates in the 2018 general election will be diluted relative to the votes for Republican Party candidates, as it has been in previous elections, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican Party candidates will be increased—by the windfall votes accruing to Republican Party candidates solely due to their first position on the ballot. Ms. Bottcher has also been actively engaged in efforts to help elect Democratic Party candidates in Florida, efforts which the Ballot Order Statute makes significantly more difficult. Specifically, Ms. Bottcher has volunteered in GOTV efforts for candidates for the state senate and house and is currently volunteering for the campaign of Kayser Enneking in Florida State Senate District 8, all with the goal of helping Democratic Party

candidates win election in Florida. In addition to her volunteer work for the Kayser Enneking campaign, Ms. Bottcher plans to continue to financially support and volunteer for Democratic Party candidates seeking to win election in Florida in the upcoming 2018 general election. The Ballot Order Statute, if it is not enjoined, will burden Ms. Bottcher's ability to engage in effective efforts to elect Democratic Party candidates by requiring substantially more time and resources to achieve her mission.

16.   Plaintiff PRIORITIES USA ("Priorities") is a 501(c)(4) nonprofit, voter-centric progressive advocacy and service organization. Priorities' mission is to build a permanent infrastructure to engage Americans in the progressive movement by running a permanent digital campaign to persuade and mobilize citizens around issues and elections that affect their lives. In furtherance of this purpose, Priorities works to help elect Democratic Party candidates across the country, including in Florida. In 2016, Priorities made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic candidates—several million dollars of which were spent for those purposes in Florida. In 2018, Priorities again expects to make contributions and expenditures in the millions of dollars to persuade and mobilize voters to support Democratic candidates in state and federal elections around the country, including in Florida elections.  The Ballot Order Statute directly harms Priorities

by frustrating its mission of, and efforts in, electing Democratic Party candidates in Florida by giving an unfair and artificial electoral advantage to Republican Party candidates. Priorities is aware of Florida's Ballot Order Statute and will have to expend and divert additional funds and resources in GOTV, voter persuasion efforts, and other activities in Florida, at the expense of its efforts in other states, in order to combat the effects of the Ballot Order Statute in getting Democratic candidates elected in Florida, including in regard to the 2018 general election.

17. Plaintiff DNC SERVICES CORPORATION / DEMOCRATIC NATIONAL COMMITTEE is the national committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14), and its mission is to elect local, state, and national candidates of the Democratic Party to public office throughout the United States, including in Florida. The DNC works to accomplish its mission across the country and in Florida by, among other things, making expenditures for, and contributions to, Democratic candidates (at all levels) and assisting state parties throughout the country, including in Florida. The Ballot Order Statute directly harms the DNC by frustrating its mission of, and efforts in, electing Democratic Party candidates in Florida by giving an unfair and artificial electoral advantage to Republican Party candidates. The DNC is aware of Florida's Ballot Order Statute and will have to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Florida, at the expense of its efforts in

other states, in order to combat the effects of the Ballot Order Statute in getting Democratic candidates elected in Florida, including in regard to the 2018 general election. The DNC has members and constituents across the United States, including in Florida, where the DNC's members and constituents include Democratic Party candidates, elected officials, and voters in Florida. The Ballot Order Statute further harms the DNC because it treats the DNC's candidate members, as well as their supporters, in Florida differently from Republican Party candidates in partisan elections in the State by listing Republican candidates first on the ballot simply because a Republican candidate won the last gubernatorial election. As a result of being listed first on the ballot, Republican candidates have gained—in every single partisan election in Florida held in the last two decades— and will continue to gain an unfair and artificial electoral advantage over the DNC's candidate members, if the Ballot Order Statute is not enjoined, causing them substantial and irreparable injury. The DNC's voter members and its constituency of Democratic voters will also suffer serious, irreparable injury as a result of the Ballot Order Statute, as they previously have in Florida elections, because their votes for Democratic Party candidates will be diluted in the 2018 election, in the absence of an injunction. In particular, without an injunction, the meaningfully and thoughtfully cast votes for Democratic Party candidates of the DNC's voter members and its Democratic voter constituents will be diluted in the

2018 election relative to the votes for Republican Party candidates, as they have been in previous elections, because their weight and impact will be decreased— and the weight and impact of votes cast for Republican Party candidates will be increased—by the windfall votes accruing to Republican Party candidates solely due to their first position on the ballot.

18.    Plaintiff DSCC is the national senatorial committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14), and its mission is to elect candidates of the Democratic Party to the United States Senate, including in Florida. The DSCC works to accomplish its mission across the country and in Florida by, among other things, making expenditures for, and contributions to, Democratic candidates for U.S. Senate and assisting state parties throughout the country, including in Florida.  In 2016, the DSCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic Senate candidates, including several million dollars which were spent in Florida. In 2018, Democratic Senator Bill Nelson is seeking re-election to the U.S. Senate and his challenger is current Republican Governor Rick Scott. As a result, in 2018 the DSCC again expects to make substantial contributions and expenditures to support the Democratic candidate for U.S. Senate in Florida. The Ballot Order Statute directly harms the DSCC by frustrating its mission of, and efforts in, electing the Democratic Party candidate to the U.S. Senate in Florida by

giving an unfair and artificial electoral advantage to the Republican Party candidate. The DSCC is aware of Florida's Ballot Order Statute and will have to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Florida, at the expense of its efforts in other states, in order to combat the effects of the Ballot Order Statute in the 2018 general election for U.S. Senate in Florida.

19.     Plaintiff DCCC is the national congressional committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14). The DCCC's mission is electing Democratic candidates to the U.S. House of Representatives from congressional districts across the United States, including from Florida's 27 congressional districts. The DCCC works to accomplish its mission across the country and in Florida by, among other things, making expenditures for, and contributions to, Democratic candidates for U.S. Congress and assisting state parties throughout the country, including in Florida.  In 2016, the DCCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic congressional candidates—several million dollars of which were spent for those purposes in Florida. For 2018, the DCCC has identified at least three congressional districts in Florida (FL-06, FL-18, and FL-26) as targeted races, in which it will expend resources to support the Democratic candidate. Overall, in 2018, the DCCC expects to make contributions and

expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic candidates in congressional elections around the country, including in Florida. The Ballot Order Statute directly harms the DCCC by frustrating its mission of, and efforts in, electing Democratic Party candidates to the U.S. Congress in Florida by giving an unfair and artificial electoral advantage to the Republican Party candidate. The DCCC is aware of Florida's Ballot Order Statute and will have to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Florida, at the expense of its efforts in other states, in order to combat the effects of the Ballot Order Statute in getting Democratic candidates elected in Florida in the 2018 general election.

20.    Plaintiff the DEMOCRATIC GOVERNORS ASSOCIATION is an independent voluntary political organization dedicated to supporting Democratic governors and electing Democratic gubernatorial candidates across the United States, including in Florida. The DGA works to accomplish its mission across the country and in Florida by, among other things, making contributions to help elect Democratic candidates for governor, including in Florida.  In prior election cycles, the DGA made contributions and expenditures in the millions of dollars to help elect Democratic candidates. In 2018, the DGA again expects to make contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic candidates in Gubernatorial elections

around the country, including in Florida, which will be holding a Governor's election. The Ballot Order Statute directly harms the DGA by frustrating its mission of, and efforts in, electing a Democratic Party candidate to Governor in Florida by giving an unfair and artificial electoral advantage to the Republican Party candidate. The Ballot Order Statute almost certainly frustrated the DGA's efforts in the 2010 and 2014 elections for Florida Governor, in which the Democratic Party candidate lost to Republican candidate, Rick Scott, by 1.2% and 1% of the vote, respectively, which is less than the average percentage point advantage given to the Republican Party candidates attributable to position bias stemming from the Ballot Order Statute. The DGA is aware of Florida's Ballot Order Statute and will have to expend and divert additional funds and resources on voter persuasion efforts and other activities in Florida, at the expense of its efforts in other states, in order to combat the effects of the Ballot Order Statute in getting a Democratic candidate elected in Florida in the 2018 general election.

21. Plaintiff the DEMOCRATIC LEGISLATIVE CAMPAIGN COMMITTEE is a political organization dedicated to the election of Democratic Party state legislative candidates in legislative bodies throughout the United States, including in Florida. The DLCC furthers this mission across the country and in Florida by providing training, data, resources, and other support to help to elect Democrats running for state legislative office. The DLCC plans on providing

contributions and expenditures to help to elect Democratic state legislative candidates in the 2018 Florida election. The Ballot Order Statute directly harms the DLCC by frustrating its mission of, and efforts in, electing Democratic Party state legislative candidates in Florida by giving an unfair and artificial electoral advantage to Republican Party legislative candidates. The DLCC is aware of Florida's Ballot Order Statute and will have to expend additional funds and other resources in its activities to combat the effects of the Ballot Order Statute in getting Democratic legislative candidates elected.

22.    Defendant, KENNETH DETZNER, is the Secretary of State of Florida and is named as a Defendant in his official capacity. He is Florida's chief elections officer and, as such, is responsible for the administration and implementation of election laws in Florida, including the Ballot Order Statute. *See* FLA. STAT. § 97.012(1) (describing Secretary of State as "the chief election officer of the state" who has responsibility to "[o]btain and maintain uniformity in the interpretation and implementation of the election laws"). The Secretary, personally and through the conduct of his employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

## STATEMENT OF FACTS AND LAW

### A. Position Bias

23.    The candidate whose name is listed first on a ballot receives the advantage of additional votes solely due to his or her position on the ballot over all of the other candidates listed. *See Holtzman*, 62 Misc. 2d at 1023 (recognizing "there is a distinct advantage to the candidate whose name appears first on a ballot" and this phenomenon is "so widespread and so universally accepted as to make it almost a matter of public knowledge"); Nuri Kim et al., *Moderators of Candidate Name-Order Effects in Elections: An Experiment*, 36 POLITICAL PSYCHOLOGY 525, 526 (2015) ("The body of research on name-order effects indicates that candidates often received more votes when their names were listed first than when their names were listed after the names of one or more candidates with whom they competed."); Josh Pasek et al., *Prevalence and Moderators of the Candidate Name-Order Effect*, 78 PUBLIC OPINION QUARTERLY 416, 417 (2014) ("Most studies reported evidence of primacy effects, whereby candidates received more votes when listed first than when listed later.").

24.    Position bias in favor of the first listed candidate on a ballot occurs because individuals have an implicit bias to pick the first choice in a set list "on the basis of heuristic cues." Eric Chen et al., *The Impact of Candidate Name Order on Election Outcomes in North Dakota*, 35 ELECTORAL STUDIES 115, 116 (2014)

(describing that "evidence from psychology indicates that people often select the first option among a set of alternatives") (internal citations omitted); Joanne M. Miller and John Krosnick, *The Impact of Candidate Name Order on Election Outcomes*, 62 PUBLIC OPINION QUARTERLY 291 (1998) ("[D]ozens of experiments . . . nearly always found bias toward selecting initially offered options.") (internal citations omitted); Pasek, *supra* at 418 (recognizing that voters choose the first listed candidate by rely[ing] on the "up is good" or "first is best" heuristic) (internal citations omitted).

25.     Position bias in the context of elections occurs most often when voters (1) lack information about candidates, or (2) are ambivalent towards the candidates, despite having information about them. In each of these scenarios, the order of candidates' names on the ballot can be enough to nudge the voter to select the first listed candidate. Studies have consistently shown this is true for enough voters in any given election to be statistically significant.

**B. Effects of Position Bias**

26.     In Florida, the first-listed candidates in partisan elections receive the following average percentage point "bump" due to position bias: (1) Republican candidates gain a 2.70 percentage point advantage by being listed first on the ballot; and (2) Democratic candidates receive a 1.96 percentage point advantage by being listed first.

27.     The advantage gained by the first-listed candidate is only part of the story: the full impact of position bias in any given race also naturally includes the *disadvantage* following to later-listed candidates. Calculating the second part of that equation can be difficult in elections involving more than two candidates, but at least in two-candidate elections, the total effect is roughly double the advantage to the first-listed candidate. Thus, the overall percentage point gap due to position bias in Florida's two-party, two-candidate elections is calculated to be as high as 5.40 percentage points when Republican Party candidates are listed first, and 3.92 percentage points when Democratic Party candidates are listed first.

28.     Position bias is commonly seen with major party candidates, who are "particularly prone to the influence of name order, perhaps because more voters were ambivalent about these candidates due to the extensive publicity that they received." Pasek, *supra* at 433.

29.     The impact of position bias is also markedly stronger in high turnout elections. Miller, *supra* at 316; *see also* Pasek, *supra* at 433 ("Name order had more impact on the outcomes of candidates running for less-visible offices during high-turnout years, presumably because voters were less informed about such candidates and average voter information was presumably lower in such elections.").

## C. The Ballot Order Statute

30.     Florida's Ballot Order Statute mandates that candidates of the political party that won the previous election for Governor be listed first on the ballot, before any other recognized major political parties' candidates. Specifically, the Statute provides: "[t]he names of the candidates of the party that received the highest number of votes for Governor in the last election in which a Governor was elected shall be placed first for each office on the general election ballot, together with an appropriate abbreviation of the party name; the names of the candidates of the party that received the second highest vote for Governor shall be placed second for each office, together with an appropriate abbreviation of the party name." FLA. STAT. § 101.151(3)(a) (2017).[2]

31.     Thus, the Ballot Order Statute, on its face, treats the two major political parties vastly differently: the candidates of the party that won the last Florida Governor's election are listed first on the ballot in *every* partisan election that follows (until such time as another party's candidate wins the Governor's

---

[2] A separate provision of Section 101.151, Florida Statutes, which is not at issue in this litigation, provides that recognized major political party candidates are followed on the general election ballot by candidates of minor political parties, who are then followed by candidates who do not affiliate with a political party, organized in the order in which they qualified. FLA. STAT. § 101.151(3)(b) ("Minor political party candidates shall have their names appear on the general election ballot following the names of recognized political parties, in the same order as they were qualified, followed by the names of candidates with no party affiliation, in the order as they were qualified.").

election), while the candidates whose party did not win the last Governor's election are *never* listed first on the ballot. Candidates in the former category thus enjoy an artificial and unfair electoral advantage based solely on the performance of their party in a different election, which in some cases occurred years earlier.

### D.  Effects of The Ballot Order Statute on Elections in Florida

32.    As a direct result of the Ballot Order Statute, position bias effects have had and, unless enjoined, will continue to have, a significant impact on elections in Florida, in favor of the candidate listed first on the ballot, their affiliated political party, and the voters who support them.

33.    Under the Ballot Order Statute, the Republican Party, its candidates, and voters have enjoyed an arbitrary and unfair advantage in all partisan elections in Florida, due solely to position bias, for two decades, simply because the three candidates to hold the Governor's office since then have all run and been elected as Republicans.[3]

34.    Some of these Republican Governors were elected in very close elections. For example, in the 2010 and 2014 gubernatorial elections, Republican

---

[3] In the past 20 years, John Ellis ("Jeb") Bush (1999-2007), Charlie Crist (2007-2011), and Richard ("Rick") Scott (2011-present) have been elected and served as Governors of Florida. Although Governor Crist identified as an independent from April 2010 to January 2011, he was elected as Governor as a Republican candidate. *See* FLA. STAT. § 101.151(3)(a) (awarding ballot primacy to the candidates whose parties "received the highest number of votes for Governor in the last election").

Rick Scott defeated the Democratic candidate by only 1.2% and 1% of the vote, respectively, which is less than the average percentage point advantage that Republican candidates enjoy solely as the result of position bias stemming from the Ballot Order Statute.

35.    In such cases, the systematic unfair and artificial electoral advantage given to every single Republican candidate in the partisan elections that followed has stemmed from a very small percentage of the vote in a single, unrelated election.

36.    Indeed, given that the very narrow margin of victory enjoyed by Governor Scott in 2010 and 2014 is within the range that may be solely attributable to position bias alone, it is reasonable to conclude that, in at least some cases, Republican success in the gubernatorial races may be a self-fulfilling prophecy, made possible by the Ballot Order Statute, which then serves to confer significant advantages to every Republican candidate to run in any ensuing partisan election in Florida, until a Republican is defeated in the race for Governor.

37.    Unless the Ballot Order Statute is enjoined, the Republican Party, its candidates, and the voters who support them, will continue to enjoy the arbitrary and unfair advantage that the Statute confers on them in the 2018 election, for no other reason than that the current Governor of Florida, Rick Scott, is a Republican.

38.     The arbitrary and unfair advantage conferred by the Ballot Order Statute on Republicans over the past twenty years provides reason enough to invalidate the law, but even more troublingly, multiple elections in Florida in recent years (including and beyond the elections of Governor Scott discussed above) have been decided by vote counts within the range of the position bias, raising the strong likelihood that in some of these elections, the Ballot Order Statute has been outcome determinative.

39.     For example, in 2000, the Republican Party candidate for U.S. House of Representatives in Congressional District 8 defeated the Democratic Party candidate by 1.6% of the vote, less than the average percentage point advantage conferred to Republican Party candidates pursuant to position bias.

40.     Similarly, in 2006, the Republican Party candidate for U.S. House of Representatives in Congressional District 13 defeated the Democratic Party candidate by only 0.2% of the vote.

41.     Also in 2006, the Republican candidate for Florida House of Representatives District 44 defeated the Democratic Party candidate by 1.8% of the vote.

42.     Most recently, in 2016, the Republican Party candidate in the Florida House of Representatives District 36 election defeated the Democratic Party candidate by 1.02% of the vote, which was equivalent to 691 votes.

43.    Also in 2016, the Republican candidate for Florida House of Representatives District 63 defeated the Democratic Party candidate by 1.8% of the vote.

**E. Election Administration Concerns Cannot Justify the Florida Ballot Order Statute**

44.    Neither political favoritism of one party (here, the political party of the Governor) and its voters, nor purported election administration concerns, can sustain the Ballot Order Statute against legal challenge. *See Dunn v. Blumstein*, 405 U.S. 330, 350 (1972) ("States may not casually deprive a class of individuals of the vote because of some remote administrative benefit to the State."); *see also Graves v. McElderry*, 946 F. Supp. 1569 (W.D. Okla. 1996) (finding no legitimate state interest in always placing one major political party first on the ballot).

45.    There are, in fact, multiple alternative ways to order major political party candidates on a ballot—ways that eliminate or reduce the systematic unfair advantages of position bias in elections. Other states have already adopted these alternative ballot order systems, evidencing that they are not too burdensome and are practical alternatives.

46.    Some states, such as Ohio, have adopted ballot order procedures that consistently rotate the order of names on a ballot, which significantly reduces or eliminates position bias effects. *See* OHIO REV. CODE ANN. § 3505.03 ("The names of all candidates for an office shall be arranged in a group under the title of that

office, and, except for absentee ballots or when the number of candidates for a particular office is the same as the number of candidates to be elected for that office, shall be rotated from one precinct to another."); *see also* Ohio Const. art. V, § 2a ("The general assembly shall provide by law the means by which ballots shall give each candidate's name reasonably equal position by rotation or other comparable methods to the extent practical and appropriate to the voting procedure used."); O.R.C. Ann. § 3505.03 ("The names of all candidates . . . shall be rotated from one precinct to another.").

47.    Courts have consistently recognized that this system of rotation is the fairest. *See, e.g.*, *McLain*, 637 F.2d at 1169 ("[T]he fairest remedy for a constitutionally defective placement of candidates would appear to be some form of ballot rotation whereby 'first position' votes are shared equitably by all candidates," and "[o]ur preliminary research suggests that the most effective rotation system is one which rotates names from one ballot to the next."); *Gould*, 14 Cal. 3d at 676 (stating "a number of state courts have specifically ordered election officials to implement a ballot rotation method, thereby largely eliminating the potential distorting effect of positional preference").

48.    A number of other states, including New Jersey, Illinois, and California, have adopted random selection ballot order systems, which reduce position bias effects and eliminate long-term political party entrenchment in being

listed first. *See, e.g.*, N.J. STAT. § 19:14-12 ("The county clerk shall draw lots in his county to determine which columns the political parties which made nominations at the next preceding primary election shall occupy on the ballot in the county," and "[t]he name of the party first drawn shall occupy the first column at the left of the ballot, and the name of the party next drawn shall occupy the second column, and so forth."); 10 ILCS 5/7-60 ("Each county clerk and board of election commissioners shall determine by a fair and impartial method of random selection the order of placement of established political party candidates for the general election ballot."); CAL. ELEC. CODE § 13112 ("The resulting random order of letters constitutes the randomized alphabet, which is to be used in the same manner as the conventional alphabet in determining the order of all candidates in all elections."); *see also Gould*, 14 Cal. 3d at 676 (describing lottery system as "not continually work[ing] a disadvantage upon a fixed class of candidates," as under such a system, "all candidates are at least afforded an equal opportunity to obtain the preferential ballot position").

49.     Adopting a rotational or random selection method of ballot order would not impose significant administrative costs on the State and would ensure fairer elections in Florida.

## CLAIMS FOR RELIEF

## COUNT I

**First Amendment and Equal Protection**
**U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202**
**Undue Burden on the Right to Vote**

50.     The Voter Plaintiffs reallege and incorporate by reference paragraphs 1 through 49, as though fully set forth herein.

51.     Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the State for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted); *see also Gould*, 14 Cal. 3d at 670 (applying "close scrutiny" standard of review, because ballot order system "impose[d] a very 'real and appreciable impact' on the equality, fairness and integrity of the electoral system"); *Akins*, 154 N.H. at 67 (applying strict scrutiny

32

to determining state constitutionality of ballot order system that prioritized candidate names alphabetically).

52.    Florida's Ballot Order Statute, which provides an unfair and artificial advantage to candidates whose political party won the last gubernatorial election, burdens the right to vote of those voters, including the Voter Plaintiffs, the DNC voter members, and the constituencies of the Democratic Party committee and organizational Plaintiffs, who support the non-favored major political party's candidates who are not listed first on the ballot, because it dilutes their vote relative to the votes for the favored political party candidate listed first on the ballot. *See McLain*, 637 F.2d at 1163 (describing system of listing first candidates of party that received the most votes in last North Dakota congressional election as "burden[ing] the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the *fourteenth amendment*"); *see also Gould*, 14 Cal. 3d at 670 (describing statute that prioritized ballot order by incumbency as "inevitably dilut[ing] the weight of the vote of all those electors who cast their ballots for a candidate who is not included within the favored class"). The weight and impact of their votes is consistently decreased—and the weight and impact of the votes for the favored party's candidates, increased—by the windfall votes accruing to the first-listed candidates, solely due to their first position on the ballot as a result of the operation of the Ballot Order Statute.

53.     The Ballot Order Statute is not justified by any legitimate state interest, let alone a compelling state interest narrowly drawn, that is sufficiently weighty to justify the burden on the right to vote. *See McLain*, 637 F.2d at 1167 (holding state's asserted interest in "making the ballot as convenient and intelligible as possible for the great majority of voters" was not a legitimate state interest to justify listing first on the ballot candidates of the political party that received the most votes in the last congressional election and constituted "favoritism"); *Gould*, 14 Cal. 3d at 675 (rejecting the argument that the asserted state interests in promoting "efficient, unconfused voting" justified an incumbent-first ballot order system and holding that an interest "in promoting speed in the voting booth" was not a "compelling" state interest); *Holtzman*, 62 Misc. 2d at 1024 (holding there was no rational basis for "such favoritism to a candidate merely on the basis of his having been successful at a prior election" in terms of ballot order).

54.     Thus, the burdens imposed by the Statute on the fundamental right to vote outweigh any alleged benefits of the law.

55.     Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between the Secretary of State and Plaintiffs, who have adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries to their fundamental

right to vote, including, most immediately, in the upcoming general elections to be held on November 6, 2018.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

> (a)     declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Ballot Order Statute violates the First and Fourteenth Amendments to the United States Constitution;

> (b)     preliminarily and permanently enjoining the Secretary of State, his respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Ballot Order Statute under the authority granted to this Court by Federal Rule of Civil Procedure 65(a) and 28 U.S.C. § 2202;

> (c)     awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

> (d)     granting such other and further relief as the Court deems just and proper, including the implementation of a nondiscriminatory means of determining the order of candidates' names on the ballot.

## COUNT II

### Equal Protection
### U.S. Const. Amend. XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202, Disparate Treatment

56.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 49, as though fully set forth herein.

57.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Center*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

58.    Florida's Ballot Order Statute treats one major political party—and its candidates and the voters and organizations who support it—including the Voter Plaintiffs, Priorities, as well as the DNC, the DSCC, the DCCC, the DGA, the DLCC, and their members and constituents, differently from other similarly situated major parties and their candidates and supporters, giving one a consistent, unfair and arbitrary electoral advantage, based solely on the performance of that party's candidate in the last gubernatorial election, in violation of the Equal Protection Clause of the Fourteenth Amendment. *See McLain*, 637 F.2d at 1166 (holding statute requiring political party of the candidate who received the most votes in prior North Dakota congressional election to be listed first on ballots unconstitutional, in violation of the Fourteenth Amendment's Equal Protection

Clause); *see also Mann*, 333 F. Supp. at 1267 (enjoining ballot order system of placing candidates at top of ballot based on prior electoral success—due to "seniority" or "incumbency"—and stating that "[t]he Fourteenth Amendment requires all candidates, newcomers and incumbents alike, to be treated equally"), *aff'd by* 398 U.S. 955 (1970); *Netsch v. Lewis*, 344 F. Supp. 1280, 1281 (N.D. Ill. 1972) (holding statute prescribing ballot order by past electoral success violated Fourteenth Amendment because it denied "the right to equal protection"); *Holtzman v. Power*, 62 Misc. 2d at 1024 (holding system requiring placement of incumbent at top of ballot unconstitutional because it violated the Equal Protection Clause); *see also Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977) ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party.") (citation omitted).

59.    Florida's Ballot Order Statute does not further any legitimate state interest, much less a compelling state interest narrowly tailored, that is sufficiently weighty to justify favoring the political party of the current Governor (and the serious and irreparable injury that results to the Plaintiffs because of that favoritism), by ensuring that all candidates running in future elections under the auspices of the same party are listed first on the ballot and thus receive an unfair electoral advantage solely resulting from their position of primacy. *See, e.g.*, *McLain*, 637 F.2d at 1167 (holding that state's asserted interest in "making the

ballot as convenient and intelligible as possible for the great majority of voters" did not justify a ballot order statute listing first on the ballot the candidates of the political party that won the last congressional race); *Holtzman*, 62 Misc. 2d at 1024 (holding there was no rational basis for "such favoritism to a candidate merely on the basis of his having been successful at a prior election" in terms of ballot order).

60.    Injunctive and declaratory relief is needed to resolve this existing dispute, which presents an actual controversy between the Secretary of State and Plaintiffs, who have adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries due to disparate treatment in violation of the Equal Protection Clause, including, most immediately, in the upcoming general elections to be held on November 6, 2018.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

(a)    declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Ballot Order Statute violates the Fourteenth Amendment to the United States Constitution;

(b)    preliminarily and permanently enjoining the Secretary, his respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Ballot Order Statute under the authority granted to this Court by Federal Rule of Civil Procedure 65(a) and 28 U.S.C. §    2202;

(c)    awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

(d)    granting such other and further relief as the Court deems just and proper, including the implementation of a nondiscriminatory means of determining the order of candidates' names on the ballot.

Dated this 24th day of May, 2018.

Respectfully submitted,

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No.: 0184111
KING, BLACKWELL, ZEHNDER
    & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Amanda Callais*
Jacki L. Anderson*
John M. Geise*
Alexi Velez*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
acallais@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com
avelez@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

*Counsel for the Plaintiffs*

*\*Motions for Pro Hac Vice Forthcoming*