UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| NANCY CAROLA JACOBSON, TERENCE FLEMING, SUSAN BOTTCHER, PRIORITIES USA, DNC SERVICES CORPORATION / DEMOCRATIC NATIONAL COMMITTEE, DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE, DCCC a/k/a DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE, DEMOCRATIC GOVERNORS ASSOCIATION, and DEMOCRATIC LEGISLATIVE CAMPAIGN COMMITTEE,<br><br>    Plaintiffs,<br><br>v.<br><br>KENNETH DETZNER, in his official capacity as the Florida Secretary of State,<br><br>    Defendant,<br><br>and<br><br>NATIONAL REPUBLICAN SENATE COMMITTEE, and REPUBLICAN GOVERNORS ASSOCIATION,<br><br>    Defendant-Intervenors. | Case No. 4:18-cv-00262-MW-CAS |

## CASE MANAGEMENT REPORT

The parties propose the following dates and discovery plan pursuant to FED. R. CIV. P. 26(f):

1

| DEADLINE OR EVENT | PLAINTIFFS' DATES | DEFENDANT'S DATES |
|---|---|---|
| **Mandatory Initial Disclosures** (pursuant to Fed. R. Civ. P. 26(a)(1) as amended effective December 1, 2000) | **Jan. 30, 2019** | **Same** |
| **Certificate of Interested Persons and Corporate Disclosure Statement** | **Completed** | **Same** |
| **Motions to Add Parties or to Amend Pleadings** | **Jan. 30, 2019** | **Same** |
| **Dispositive Motions** [Responses due February 11, 2019, assuming 21 days] | **Jan. 30, 2019** | **Apr. 19, 2019** |
| **Disclosure of Expert Reports**<br><br>**Plaintiffs:**<br>[30 days after Plaintiffs] **Defendant:**<br>**Intervenors:**<br>[14 days later] **Plaintiffs' Rebuttal:** | **Jan. 30, 2019**<br>**Mar. 1, 2019**<br>**Mar. 1, 2019**<br>**Mar. 15, 2019** | **Same** |
| **Discovery Deadline** | **Apr. 10, 2019** | **Same** |
| *Daubert* **and All Other Motions** [Responses due April 29, 2019 (on Plaintiffs' Schedule) or May 17 (on Defendant's Schedule), assuming 14 days] | **Apr. 15, 2019** | **May 3, 2019** |
| **Meeting to Prepare Joint Final Pretrial Statement** [10 days before submitting Final Pretrial Statement] | **Apr. 19, 2019** | **May 10, 2019** |
| **Final Pretrial Statement** (with disclosures under Federal Rule of Civil Procedure 26(a)(3)) [over 60 days after 21-day response date for dispositive motions, and 14 days before final pretrial conference] | **Apr. 29, 2019** | **May 20, 2019** |

| DEADLINE OR EVENT | PLAINTIFFS' DATES | DEFENDANT'S DATES |
|---|---|---|
| **Objections under Federal Rule of Civil Procedure 26(a)(3)** [7 days after Final Pretrial Statement] | May 6, 2019 | May 27, 2019 |
| **Final Pretrial Conference** [14 days before Trial] | May 13, 2019 (or as otherwise set by the Court) | May 31, 2019 |
| **Trial Term Begins** | May 27, 2019 | June 14, 2019 |
| **Estimated Length of Trial** [trial days] | 3-6 days ||
| **Jury / Non-Jury** | Non Jury ||
| **Mediation** | None Proposed ||
| **All Parties Consent to Proceed Before Magistrate Judge** | Yes____ No __X__ ||

## I. Meeting of Parties

Pursuant to Local Rule 16.1,[1] the Court's June 18, 2018 Initial Scheduling Order (ECF No. 21), and the Court's Order Granting Joint Motion to Hold Case in Abeyance (ECF No. 81), a meeting was held on November 28, 2018 at 3 p.m. by teleconference, and was attended by:

| Name | Counsel for (if applicable) |
|---|---|
| Frederick (Fritz) Wermuth<br>Abha Khanna | Plaintiffs |

---

[1] A copy of the Local Rules may be viewed at http://www.flnd.uscourts.gov.

| | |
|---|---|
| Mohammad Jazil | Defendant |
| Gary Perko | |
| | |
| Jason Torchinsky | Intervenors |
| Shawn Sheehy | |

**II.     Pre-Discovery Initial Disclosures**

**Fed. R. Civ. P. 26(a)(1)(A) - (D) Disclosures**

The parties have agreed to exchange information described in Fed.R.Civ.P. 26(a)(1)(A) - (D) by no later than  January 30, 2019.

**III.    The Matter of Magistrate Judge Jurisdiction.**

The parties have conferred regarding this issue, and agree that this matter is not suited for referral to a magistrate at this time.

**IV.    Nature and Bases of All Claims and Defenses.**

**(a)     Claims**.  Plaintiffs state that the nature and bases of its claims have been detailed in their Complaint (ECF No. 1) and Memorandum of Law in Support of Preliminary Injunction (ECF. 30) (and supporting materials reference therein). In summary, a substantial and growing body of research and empirical studies has validated the existence (and estimated the extent) of position bias – in this case, specifically, the benefit to candidates in being listed first in the vertical sequence of candidates on ballots.

The principal factual issues in regard to Plaintiffs' claims are the existence/degree of position bias**.**

**(b)** **Defenses**. The Defendant maintains that there is no constitutionally cognizable claim for "position bias." Even if there were such a claim, the Plaintiffs cannot prove a "position bias" effect as it relates to elections in Florida.

**(c)** **Intervenor Defendants' defenses.**

    a. The Complaint fails to state a claim upon which relief can be granted. While the Constitution does protect ballot access, there exists no constitutional right to a preferred position on the ballot. *See New Alliance Party v. New York Bd. Of Elections*, 861 F. Supp. 282 at 295; *Democratic-Republican Org. v. Guadagno*, 900 F. Supp. 2d 447, 457 (D.N.J. 2012); *Sarvis v. Alcorn*, 826 F.3d at 717. Because Plaintiffs' stated injury is just that – the denial of placement in the top position on the ballot – they fail to state an actionable injury that may be remedied by this Court.

    b. The Plaintiffs lack standing under Article III of the Constitution. The "case and controversy" requirement is only met where a plaintiff has standing and, in order to have standing, there must exist a showing of 1) an injury in fact; 2) causation; and 3) redressability. *Sprint Communs. Co., L.P. v. APPC Servs.*, 554 U.S. 269 at 273. Here, no injury in

fact could have possibly occurred, not only because position bias has not been proven to actually exist, but also because placement at the top of the ballot is not a legally protected interest. *See id*. Moreover, it is merely speculative that Plaintiffs' claimed "injury" would be remedied by the action of this Court, as placement at the top of the ballot does not guarantee that a given candidate will prevail in an election. *Id*.

c. Plaintiffs' claims are barred by the theory of laches. Plaintiffs have unduly delayed the assertion of this injury, inexplicably waiting decades when the studies and election data upon which they base their claims have existed for years. *See Citibank N.A. v. Citibanc Grp. Inc*, 724 F.2d 1540, 1546 (11th Cir. 1984). Such delay now causes harm to Intervenor-Defendants tasked with implementing any relief granted by the Court. *Id*; Def. Intervenors' Opp'n to Pls.' Mot. For Prelim. Inj. (Dkt. #42) at 30-37.

d. Florida's ballot order statute is lawful and is enforced in accordance with all the requirements of the U.S. Constitution. As consistently recognized by the Supreme

Court, the States possess constitutionally-derived authority to regulate elections, which may include the enactment of comprehensive and complex statutory frameworks that ensure fairness; honestly and order. *See Burdick v. Takushi*, 504 U.S. 428; *Anderson v. Celebrezze*, 460 U.S. 780; *Sarvis v. Alcorn*, 826 F.3d 708, 714 (4th Cir. 2016); *Gill v. Rhode Island*, 933 F. Supp. 151, 154 (D.R.I. 1996); *New Alliance Party*, 861 F. Supp. at 293. Only those restrictions that significantly encroach upon voting rights without compelling justification may be invalidated. *Unity Party v. Wallace*, 707 F.2d 59, 62 (2d Cir. 1983). Florida's ballot order statute was duly enacted in accordance with these principles, has been in effect for over 66 years, and poses no burden on any rights asserted by Plaintiffs. *See* Dkt. #42 at 5. Accordingly, it satisfies the *Anderson-Burdick* flexible standard and is a lawful regulation of elections. *Id*.

**V.     Settlement and Alternative Dispute Resolution.**

    **(a)     Settlement.**  The parties agree that settlement is unlikely.

7

**(b)** **Mediation.**  The parties agree that mediation is not likely to be helpful in settlement, until this Court decides the merits of Plaintiffs' constitutional claim.

**VI.** **Discovery Plan.**  The parties propose this discovery plan:

**(a)** **Subjects of Discovery.**  One or more of the parties anticipate that discovery will be needed on these subjects:  position bias and alternative methods of setting the ballot order of major-party candidates in partisan races in general elections.

**(b)** **Electronic discovery.**  The parties have discussed issues relating to disclosure or discovery of electronically stored information ("ESI"), including Pre-Discovery Initial Disclosures of Core Information in Section II above, and agree that (check one):

\_\_\_\_\_ no party anticipates the disclosure or discovery of ESI in this case;

__X__ one or more of the parties anticipate the disclosure or discovery of ESI in this case.

If disclosure or discovery of ESI is sought by any party from another party, then the following issues shall be discussed:[2]

---

[2] See Generally:  *Rules Advisory Committee Notes* to the 2006 Amendments to Rule 26(f) and Rule 16.

    i. whether disclosure or production will be limited to data reasonably available to the parties in the ordinary course of business;

    ii. if data beyond what is reasonably available to the parties in the ordinary course of business is to be sought, the anticipated scope, cost and time required for its disclosure or production, and who will bear the cost;

    iii. the format and media agreed to by the parties for the production of any electronic or computer-based data, as well as agreed procedures for such production;

    iv. whether reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise;

    v. procedures to deal with inadvertent production of privileged information; and

    vi. other problems which the parties anticipate may arise in connection with electronic or computer-based discovery.

**(c)** **Privilege or Protection**. The Parties do not anticipate a need to deviate from the requirements for asserting and preserving privileges and protection from discovery under Rule 26(b)(5), Federal Rules of Civil Procedure.

**(d)    Timing of Discovery.**

The Parties agree that the deadline for discovery should be April 10, 2019.

**(e)    Form of Discovery**.

The Parties anticipate all forms of written discovery and depositions may be appropriate, as provided by the Federal Rules of Civil Procedure.

**(f)    Usefulness of Discovery in Phases**.

The Parties do not anticipate that it would be useful to do discovery in phases.

**(g)    Limitations on Discovery**.  The parties agree to the following limitations on discovery:

   a. **Maximum Number of Interrogatories**. Twenty five (25) interrogatories, as an initial matter. Plaintiffs, however, may seek leave for additional interrogatories depending on Defendant's responses.

   b. **Maximum Number of Requests for Admission**. One hundred (100).

   c. **Maximum Number of Depositions**. Ten (10) per side.

   d. **Limits on the Length of Depositions**. The Parties do not anticipate needing to vary the limits on deposition length set forth in the Rule 30(d)(2), Federal Rules of Civil Procedure.

**(h)  Expert Witness Disclosures.**

The Parties agree that Rules 26(a)(2) disclosures of expert witnesses and their opinions should be made by Plaintiffs no later than January 30, 2019, by Defendant and Intervenors no later than March 1, 2019, and Plaintiffs' rebuttal expert disclosure no later than March 14, 2019.

## VII. Estimated Timing of Trial.

The Parties do not agree on the timing of the trial.

Plaintiffs' Position:

Plaintiffs propose a May 27, 2019 trial mainly for the following reasons. First, through discussions with Defendant's counsel, Plaintiffs expect that Defendant and/or Intervenors will raise timing as a concern in implementing a remedy for the constitutional violations alleged in this case, such that the earliest reasonable trial date is preferable for remedial purposes. Indeed, when counsel for Plaintiffs initially proposed an August 19 trial date (with an April 15 discovery deadline and May 15 deadline for dispositive motions) in advance of the parties' November 28, 2018 conference, counsel for Defendants and Intervenors raised concerns about there being sufficient time to implement a remedy before the 2020 general election, and proposed that the parties proceed immediately to summary judgment instead. Plaintiffs disagreed that this case is amenable to summary judgment, but proposed moving up the summary judgment deadline in response to

counsel's concerns so that any party who chooses to file a summary judgment motion may have it resolved as soon as possible. Plaintiffs also moved up the proposed trial date to May. Defendant's and Intervenors' objections to this schedule appear inconsistent with their previous position.

Second, counsel for Plaintiffs have other engagements that prevent their appearance on the June 14, 2019 trial date that Defendant and Intervenors have proposed, and a later trial date appears likely to fuel the aforementioned remedial concern that led Plaintiffs to propose the earlier May 27, 2019 trial date. Further, Plaintiffs submit that, in light of the preliminary injunction briefing (and accompanying expert reports), this case is highly unlikely to be amenable to resolution through summary judgment given what will likely be disputed issues of material facts reflected in the expert reports, such that the longer deadline for dispositive motions that Defendant and Intervenors seek does not justify delaying the trial.

Finally, while Plaintiffs believe the case will benefit from some further discovery (particularly given that Florida just experienced yet another election in which the governor's race, among others, was extraordinarily close), as this Court recognized at the preliminary injunction hearing, considering this case on a somewhat expedited schedule is appropriate. This is particularly so given that Defendant and Intervenors have already indicated – and Intervenors appear to

reiterate in their reference to a "laches" defense above – that there is not sufficient time to impose a remedy prior even to 2020. The assertion that the Governor-Elect cannot now be briefed on the case and decide whether summary judgment is something he wants to pursue in this case seems dubious at best, but in any event does not explain why expert discovery – which presumably will *introduce* disputes of fact, not resolve them – is at all necessary for Defendants or Intervenors to proceed on the arguments they intend to advance.

Defendant's Position:

The Defendant proposes June 14, 2019 or thereafter for trial for the following reasons: First, the Secretary maintains that filing dispositive motions on or before January 30, 2019 is impractical. Florida will have a new Governor on January 8, 2019. That new Governor should have adequate time to make informed decisions regarding this and other election-related cases before this Court. Second, the Secretary maintains that summary judgment (together, possibly, with expedited consideration on appeal) of the constitutional issues—separate and apart from the remedy for any alleged constitutional infirmities in Florida's decades-old ballot order statute—would provide finality for those who plan for elections (the State's Division of Election and the State's Supervisors of Elections) and those who participate in elections (the State's voters). But moving for summary judgment *after* expert reports and rebuttal reports have been filed and discovery completed

provides this Court an opportunity to consider a more robust record for summary judgment. (Other dates change because of the disagreement concerning the deadline for dispositive motions.) Third, as always, the Secretary remains committed to ensuring that a remedy—if required—is timely implemented without compromising the integrity of future elections. The Secretary's agreement to engage in discovery on *all* phases of the case—both the constitutional issue and remedy issue—is evidence of this. *See supra* VI (f).

Defendant-Intervenors' Position:

Defendant-Intervenors join in the Secretary's trial date of June 14, 2019 or thereafter and joins in the rationale provided.

**VIII. Suitability of Using Manual for Complex Litigation**

The parties agree that this case should not be made subject to the Manual for Complex litigation.

Date: December 20, 2018

Respectfully submitted,

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 20, 2018 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No.: 0184111
KING, BLACKWELL, ZEHNDER
& WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Amanda Callais*
Jacki L. Anderson*
John M. Geise*
Alexi Velez*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
acallais@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com
avelez@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

*Counsel for Plaintiffs Nancy Carola*

15

*Jacobson, Terence Fleming, Susan Bottcher, Priorities USA, DNC Services Corporation / Democratic National Committee, DSCC a/k/a Democratic Senatorial Campaign Committee, DCCC a/k/a Democratic Congressional Campaign Committee, Democratic Governors Association, and Democratic Legislative Campaign Committee*

*\*Admitted Pro Hac Vice*