UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| NANCY CAROLA JACOBSON, TERENCE FLEMING, SUSAN BOTTCHER, PRIORITIES USA, DNC SERVICES CORPORATION / DEMOCRATIC NATIONAL COMMITTEE, DSCC a/k/a DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE, DEMOCRATIC GOVERNORS ASSOCIATION, and DEMOCRATIC LEGISLATIVE CAMPAIGN COMMITTEE,<br><br>　　　　Plaintiffs,<br>v.<br><br>LAUREL M. LEE, in her official capacity as the Florida Secretary of State,<br><br>　　　　Defendant,<br><br>and<br><br>NATIONAL REPUBLICAN SENATE COMMITTEE, and REPUBLICAN GOVERNORS ASSOCIATION,<br><br>　　　　Defendant-Intervenors. | Case No. 4:18-cv-00262-MW-CAS<br><br>**(Expedited Review Requested)** |

## PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND/OR, IN THE ALTERNATIVE, TO QUASH THIRD-PARTY SUBPOENAS DUCES TECUM

# INTRODUCTION

In allowing the National Republican Senate Committee and Republican Governors Association ("Intervenors") to intervene in this case, the Court "note[d] the time-sensitivity in this election-related dispute" and cautioned that it "w[ould] not tolerate delay." ECF No. 36 at 3. Intervenors have failed to heed the Court's warning. Instead, they sat out virtually the entire discovery period, during which they not only failed to serve any discovery, but affirmatively declined to even discuss setting deposition dates until the end of February. Then, less than two weeks before the cutoff date set by the Court, Intervenors have served extensive documentary discovery requests on Plaintiffs' counsel and issued six separate third-party subpoenas duces tecum, all of which have return dates beyond the applicable Court-scheduled discovery cutoff date of March 8, 2019. By delaying until the eleventh hour, Intervenors have left Plaintiffs and the third parties insufficient time to respond before the discovery cutoff and have virtually ensured delay, while guaranteeing prejudice.

Intervenors have not and cannot offer any justifiable reason for their delay; to the contrary, when Plaintiffs responded that their requests were untimely, Intervenors took the untenable position that the March 8 deadline is a deadline for the *issuance* of discovery requests only, such that those requests may mandate that the rest of the discovery process (indeed, its most important part—substantive

1

responses and production) continues long after that date. Neither precedent nor logic support Intervenors' position. Plaintiffs therefore request that the Court issue a protective order specifying that neither Plaintiffs nor the third parties who have been targeted by the Intervenors' untimely discovery demands are obligated to respond. In the alternative, Plaintiffs request that the Court (1) issue a protective order with respect to the discovery requests served on Plaintiffs, and (2) quash the third-party subpoenas. Plaintiffs further seek an award of the reasonable costs incurred in preparing this motion, including attorneys' fees pursuant to Federal Rules of Civil Procedure 16, 26, and 37.

## BACKGROUND

When the Intervenors sought to involve themselves in this action, Plaintiffs opposed their intervention. This was not because they doubted Intervenors' interest—to the contrary, at the time Plaintiffs noted that Intervenors' very interest in this action "indicates that the people whose livelihood depends on the small margins of victory that many Republican candidates have enjoyed in Florida elections in recent years are convinced that position bias creates a meaningful advantage, worth spending resources to defend and protect." ECF No. 33 at 2-3. Rather, Plaintiffs had serious concerns that granting the motion to intervene would result in prejudicial delay. *See id.* at 4 ("[U]nlike the Plaintiffs (or Florida's voters), it is in . . . Intervenors' interest to delay the swift resolution of this matter,

because so long as the Ballot Order Statute remains in effect, they stand to benefit."); *see also id*. at 24 (arguing "[c]onsiderations about the efficient and timely resolution of this matter also counsel against granting . . . permission to intervene" and citing *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002), which held that the court must be satisfied permissive intervention will not unduly prejudice or delay adjudication of the original parties' rights).

When the Court granted the Intervenors' motion to intervene, it recognized Plaintiffs' concerns, and was unequivocal that it "will not tolerate delay," particularly given the "time-sensitivity in this election-related dispute." ECF No. 36 at 3. The Court concluded, "[i]f this means Proposed Intervenors must play catch-up on an expedited basis, so be it." *Id*.

The parties proceeded to brief and argue Plaintiffs' motion for a preliminary injunction and two motions to dismiss—one filed by the Secretary of State (the "Secretary"), who was the originally-named Defendant to this action, and a separate one filed by Intervenors the day after the Court granted their motion to intervene. *See* ECF Nos. 29-32, 37-38, 42-44, 51-57, 64-65, 67-68. The Court denied both motions to dismiss and the motion for a preliminary injunction. *See* ECF Nos. 69-71. After the Court denied the motion for a preliminary injunction,

and in light of the upcoming election, the Court granted the parties' joint motion to stay the matter until after the election. ECF No. 81.

The stay was automatically lifted by order of the Court on November 30, 2018. *See* ECF No. 81. Shortly thereafter, on December 21, the Court entered a scheduling order "shorten[ing] some deadlines to accommodate an earlier trial date." ECF No. 88 at 1. The scheduling order clearly establishes the discovery "deadline[]" as March 8, 2019, and sets the trial date in this case as June 3. *Id*. at 2.

Plaintiffs commenced discovery two weeks after the stay was automatically lifted, issuing their first set of interrogatories and requests for production to the Secretary on December 14, 2018. The parties conferred on scheduling and submitted a case management report on December 20. ECF No. 87. On December 21, the same day that the Court's scheduling order was issued, ECF No. 88, Plaintiffs served their first set of interrogatories and requests for production on the Intervenors. In the weeks that followed, Plaintiffs followed up with additional discovery requests to the Secretary on January 4, 2019; subpoenas to Ron DeSantis, Rick Scott, and their gubernatorial campaigns on January 22; and requests for admission to the Secretary and Intervenors, along with one additional interrogatory and one additional request for production to the Intervenors, on February 6.

Although Plaintiffs attempted to begin scheduling depositions in January, counsel for Intervenors responded that he would "not be able to begin" even "discussing potential deposition dates until after my experts are done with their reports and after my two week trial (starting [the week of February 4]) in Michigan is concluded." Ex. A. True to his word, Intervenors' counsel only began to engage in substantive discussions about dates for depositions on February 25.

On February 26, to allow the parties "sufficient time to engage in good faith discussions to potentially streamline the case and to complete any remaining necessary depositions," the parties jointly moved to extend the March 8 discovery deadline "*solely to enable [the parties] to continue to schedule and take depositions* for an additional three-week period to March 29, 2019." ECF No. 97 at 1 (emphasis added). That joint motion—to which counsel for Intervenors voluntarily signed on—expressly noted that, "[t]he Court's current Scheduling Order (ECF 88) sets a deadline for all discovery of March 8, 2019." ECF No. 97 at 1. In granting the motion, the Court's Order was similarly clear that, "[t]he discovery deadline is extended . . . for the *sole purpose of taking depositions*." ECF No. 98 at 1 (emphasis added). Accordingly, the deadline for all documentary discovery remains March 8, 2019. Moreover, and as a result of that Order, the parties are currently scheduled to take and defend at least seven depositions (and

likely more) over the next three weeks, including multiple expert witness depositions that will necessarily require substantial preparation.

As of the morning of February 25, none of the Defendants—not Intervenors nor the Secretary—had issued *any* documentary discovery requests in this case. However, that afternoon—a mere eleven days before the close of discovery—Intervenors served on Plaintiffs' counsel a series of interrogatories, requests for production, and requests for admission ("discovery requests"). *See* Ex. B. Absent a protective order, Plaintiffs' responses to the Intervenors' discovery requests will be due on March 27, 2019—well after the discovery cutoff date long set by the Court.

Then, on February 28—a mere nine days before the March 8 deadline—Intervenors provided to Plaintiffs' counsel copies of six subpoenas duces tecum addressed to various third parties ("third-party subpoenas"). *See* Ex. C. All are dated February 27, 2019, and have return dates of March 29. Even if one were to assume for the instant purposes that all were effectively served on February 27, the third parties' objection deadlines would be similarly well outside the applicable discovery cutoff date.

On March 1, Plaintiffs advised Intervenors' counsel that the discovery requests and the third-party subpoenas were clearly untimely, as they seek production of documentary discovery beyond the discovery cutoff date that the Court has established in this case, and requested that Intervenors withdraw those

- 6 -

requests. *See* Ex. D. Plaintiffs' counsel advised that, if Intervenors did not voluntarily withdraw the requests and third-party subpoenas, Plaintiffs would seek Court intervention, including an award of fees. *Id.* On March 4, Intervenors' counsel advised via email that they would not withdraw either their discovery requests or third-party subpoenas. *See id.*

Counsel for the Secretary subsequently stated that the Secretary takes no position on whether a protective order should be entered with respect to Intervenors' discovery requests and third-party subpoenas. Notably, the Secretary has not sought any documentary discovery in this case, nor has she joined in the Intervenors' requests. This motion follows.

## ARGUMENT

## I.  THE COURT SHOULD GRANT A PROTECTIVE ORDER SPECIFYING THAT PLAINTIFFS NEED NOT RESPOND TO THE INTERVENORS' UNTIMELY DISCOVERY REQUESTS

There can be no serious dispute that Intervenors' discovery requests are untimely. The Court's scheduling order could not be clearer—it sets a discovery "deadline[]" of March 8, 2019. ECF No. 88 at 1. The plain meaning of the word "deadline" is "[a] time limit for the *completion* of an activity." The Oxford American Dictionary and Thesaurus (American Ed. 2003) (emphasis added); *see also* Webster's Third New International Dictionary (3d ed. 1981) ("A date or time before which something *must be done* and after which the opportunity passes or a

penalty follows.") (emphasis added); Webster's II New College Dictionary (3d ed. 2005) ("A time limit, as for payment of a debt or *completion* of an assignment.") (emphasis added). Federal courts issue such deadlines pursuant to Federal Rule of Civil Procedure 16(b)(3)(A), which provides that a "scheduling order *must* limit the time to . . . *complete* discovery." *Id.* (emphases added). Accordingly, pursuant to the Court's order, discovery must be *completed* (not just initiated) by March 8, 2019.

That a discovery deadline constitutes a cutoff for the completion of discovery, and not a target date for the issuance of discovery requests, is well-understood by courts and reflected by nearly universal practice of counsel. Any other interpretation would not make sense, either within the context of the Federal Rules of Civil Procedure governing discovery, or as a practical matter. It is indisputable that the Federal Rules of Civil Procedure permit a party thirty days to respond to interrogatories, requests for production, and requests for admission, unless the parties agree to or a court establishes a shorter response time. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 36(a)(3). For this reason alone, courts routinely find party discovery served less than 30-days before the discovery cutoff untimely and impermissible. *See, e.g.*, *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003) ("[R]equests must be served at least thirty days prior to a completion of discovery deadline."); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*,

298 F.3d 600, 605 (7th Cir. 2002) (requests for admission served five days before the discovery cutoff were untimely where parties had not agreed to a shorter response time); *Hall v. Louisiana*, Civil Action No. 12-657-BAJ-RLB, 2014 WL 2560579, at *2 (M.D. La. June 6, 2014) (holding that discovery requests must be served at least thirty days before the close of discovery and collecting similar cases); *Bishop v. Potter*, No. 2:08-CV-00726-RLH-GWF, 2010 WL 2775332, at *1 (D. Nev. July 14, 2010) ("[F]or discovery requests to be timely, the requesting party must serve them at least 30 days before the discovery cutoff in order to allow the other party sufficient time to respond."); *NE Technologies, Inc v. Evolving Sys., Inc.*, 2008 WL 4277668, *5 (D. N.J. 2008) (requests for discovery must be made "with sufficient time to allow the answering party to respond before the termination of discovery").

Furthermore, although the Federal Rules provide that parties may stipulate to a shorter or longer time to answer, Rule 29(b) is clear that "a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for *completing* discovery." Fed. R. Civ. P. 29(b) (emphasis added). Thus, once again, the Federal Rules are clear on their face that discovery deadlines are not merely cutoffs for the issuance of discovery, but rather establish the last day upon which discovery must be completed in a case, absent a court order to the contrary. Here, the parties have not entered into any stipulation that

would modify the deadlines for responding to Intervenors' discovery requests, nor has the Court entered an order to that extent. To the contrary, the only extension that the parties have agreed to—and which the Court has approved—is an extension to complete depositions. *See* ECF No. 97. Thus, under the plain language of the Federal Rules, and as reflected by countless court decisions applying the same, Intervenors' discovery requests come too late.

The fact that Intervenors have disregarded the scheduling order and unduly delayed in issuing any documentary discovery requests until far too late is reason alone to issue a protective order under Federal Rule of Civil Procedure 26(c), which provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by disallowing or limiting discovery. "Good cause" exists when a party is subjected to untimely discovery requests. In *In re Skyport Glob. Commc'ns, Inc.*, 408 B.R. 687 (Bankr. S.D. Tex. 2009), for example, "the Defendant served the Debtor with discovery requests . . . so close to the discovery completion deadline that the Debtor was only provided [nine] days to submit [its] discovery responses without running afoul of the discovery deadline." *Id.* at 693 (quotation marks and alterations omitted). The court found that allowing "[nine] days to respond to discovery requests [was] wholly inconsistent with the Federal Rules of Civil Procedure and th[e] Court's Scheduling Order." *Id.* It further concluded that

forcing the debtor to comply with the defendant's untimely discovery requests "would lead to unreasonable and prejudicial delay" because doing so would effectively nullify the discovery deadline upon which the debtor was "entitled to rely." *Id.* The Court therefore found that "a protective order [was] warranted . . . to protect the Debtor from annoyance, embarrassment, oppression, or undue burden and expense in the form of prejudicial delay." *Id.*

So too here, Intervenors served their discovery requests "at a time when [Plaintiffs] [are unable to] respond[] without running afoul of the [Court's] [s]cheduling [o]rder," and permitting Intervenors to proceed with these discovery requests would prejudice Plaintiffs, who were entitled to rely on the cutoff date and should now be able to focus their resources on otherwise preparing for trial. *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 445 (D. Minn. 1997) ("Moreover, to allow a party to continue with formal discovery . . . after the discovery deadline unnecessarily lengthens discovery process, and diverts the parties' attention, from the post-discovery aspects of preparing a case for Trial, to continued involvement in the discovery, and in the nondispositive."). Requiring a response to Intervenors' untimely discovery requests would prejudice Plaintiffs by forcing them to devote finite resources to written discovery at a time when they are busily preparing for a host of depositions (taking and defending), preparing for

motions practice, and compiling exhibits and other information in preparation for the pretrial conference, *see* ECF No. 99 (order for pretrial conference).[1]

Accordingly, Plaintiffs have demonstrated good cause for a protective order. *See, e.g.*, *Sofo v. Pan-American Life Ins. Co.*, 13 F.3d 239, 241 (7th Cir. 1994) (district court granted a protective order where plaintiff failed to request discovery until nine days before the cutoff); *Marshall v. Royal Caribbean Cruises Ltd.*, No. 16-21140-CIV, 2016 WL 11498396, at *1 (S.D. Fla. Nov. 18, 2016) (granting a protective order where deposition was scheduled for after discovery cutoff); *Olivas v. A Little Havana Check Cash, Inc.*, No. 05-22599-CIV, 2007 WL 9723399, at *2 (S.D. Fla. Apr. 18, 2007) (same); *Smith v. Principal Cas. Ins. Co.*, 131 F.R.D. 104, 105 (S.D. Miss. 1990) (granting a protective order where interrogatories regarding experts were not timely filed); *N. Ind. Pub. Serv. Co. v. Colo. Westmoreland, Inc.*, 112 F.R.D. 423, 424 (N.D. Ind. 1986) (granting a protective order specifying that plaintiff was not required to respond to discovery requests filed on the day that discovery was to terminate).

---

[1] Nor is extending the trial deadline in this case a reasonable cure to the prejudice imposed by Intervenors' wholly unjustified late discovery requests. As this Court recognized in setting the expedited discovery schedule in the first place, this is a time-sensitive election matter, where additional delay could very well mean the difference between the issuance of a meaningful remedy that effectively addresses the harm to Plaintiffs and hundreds of thousands of Florida voters in the 2020 election, and one that does not. Due to other immovable conflicts of counsel, *see* ECF No. 87 at 11-12, including a month-long trial in August for two of Plaintiffs' lead counsel, a continuance of the current trial date in this matter would almost certainly mean it is not heard until the Fall of 2019, at the earliest. The Secretary has previously indicated that any changes to the ballot order system will require some administrative lead up. Thus, by disregarding the Court's clear discovery cutoff date, Intervenors have put Plaintiffs in an impossible position — either suffer the prejudice of diverting finite and precious resources to responding to their inexcusable untimely requests, or seek an extension that could well prejudice their ability to obtain the relief that they seek.

It is also worth emphasizing that *none* of the requests by Intervenors are for information that they could not have just as easily requested as early as December, when the Court lifted the stay in this matter and issued its scheduling order. Simply put, there is no legitimate justification for Intervenors' decision to ignore, wholesale, the clearly-established deadlines set by the Court in this case. For all of these reasons, the Court should grant Plaintiffs' Motion for a Protective Order.

## II.   THE COURT SHOULD ISSUE A PROTECTIVE ORDER SPECIFYING THAT THE THIRD PARTIES NEED NOT RESPOND TO THE SUBPOENAS OR, IN THE ALTERNATIVE, QUASH THE THIRD-PARTY SUBPOENAS

The third-party subpoenas are similarly untimely. Plaintiffs' counsel received copies of the third-party subpoenas on February 28, 2019, though the subpoenas are dated February 27. It is not clear when or whether all or some have been served. But even assuming for the purposes of this motion that Intervenors did manage to accomplish service on all of the third parties on February 27, *cf.* Fed. R. Civ. P. 45(a)(4) (requiring notice to parties before service of third-party subpoenas), that date is a mere nine days before the close of discovery. The third parties have fourteen days to serve objections under the Federal Rules, *see* Fed. R. Civ. P. 45(d)(2)(B), which means their objections would be due after the discovery cutoff. Indeed, the date for production noted in the subpoenas is March 29, a full three weeks after the deadline. Accordingly, the third-party subpoenas are untimely, and requiring the third parties to respond to them would effectively

vitiate the Court's scheduling order. *See, e.g.*, *Holmes v. Utah*, No. 2:12-CV-1098, 2014 WL 1329352, at *1 (D. Utah Apr. 2, 2014) (noting "a request for documents under Rule 45 is discovery and must comply with the discovery cutoff date," and holding that subpoenas served shortly before the close of discovery were untimely); *Jackson v. Wilson Welding Serv., Inc.*, Civil Action No. 10-2843, 2012 WL 14265, at *2 (E.D. La. Jan. 4, 2012) (granting motion to quash where "subpoenas required the non-parties to produce documents . . . fourteen (14) days after the discovery deadline"); *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) ("Rule 45 subpoenas are 'discovery' under Rules 16 and 26 of the Federal Rules of Civil Procedure, and are subject to the same deadlines as other forms of discovery."); *Mortg. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 566 (W.D.N.C. 2002) (adopting the majority view that "a Rule 45 subpoena does in fact constitute discovery" and collecting cases).[2]

Plaintiffs have standing to move for a protective order to limit the scope of discovery requested via third-party subpoenas. *See, e.g.*, *Bounds v. Capital Area Family Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 219 (M.D. La. 2016) ("Defendants . . . have standing pursuant to Rule 26(c)(1) to seek a limitation and/or modification of the scope of the subpoena"); *NetJets Aviation, Inc. v. Peter*

---

[2] Rule 45 permits the issuer of the subpoena to set the date by which the recipient must respond, and on its face, establishes no outward limit for that deadline. Thus, if Intervenors' position were correct, litigants could engage in discovery into perpetuity long beyond any Court established "discovery deadline" by issuing subpoenas to third parties with return dates set long into the future. This would obviously be an untenably absurd result.

*Sleiman Dev. Grp., LLC*, No. 310-CV-483-J-32MCR, 2011 WL 6752488, at *1 (M.D. Fla. Dec. 22, 2011) (allowing defendants to challenge third-party subpoenas through a motion for a protective order); *Mortg. Payment Prot., Inc. v. Cynosure Fin., Inc.*, No. 608CV1212ORL22GJK, 2010 WL 11507437, at *4 (M.D. Fla. Nov. 5, 2010) ("Plaintiff has standing to seek to enforce the Court's discovery deadline" by moving for a protective order as to third-party subpoenas). And courts have found good cause to issue protective orders to protect third parties from untimely discovery requests. *See, e.g.*, *Zendejas v. Redman*, No. 15-81229-CV, 2017 WL 2782034, at *1 (S.D. Fla. June 26, 2017) ("Based on the fact that the subpoenas were issued well after the discovery deadline, Defendants have established good cause for a protective order."); *Mortg. Payment Prot., Inc.*, 2010 WL 11507437, at *4 ("[T]he Court finds that [the third-party] Subpoena constitutes an untimely discovery request and Plaintiff has demonstrated good cause for a protective order as to the documents requested in the subpoena."). Here, good cause exists to issue a protective order with respect to the third-party subpoenas for the same reasons outlined above with respect to the discovery requests. Further, "[t]he obligation of a party to monitor an opponent's discovery, as allowed by Rule 45 Subpoenas, is no less burdensome or expensive than that demanded by the other methods of formal discovery and, in fact, can be considerably more burdensome and expensive." *Marvin Lumber*, 177 F.R.D. at 445. Accordingly, Plaintiffs request

that the Court issue a protective order specifying that the third parties need not respond to Intervenors' untimely subpoenas.

In the alternative, Plaintiffs move to quash the third-party subpoenas as violative of the Court's scheduling order. Plaintiffs have standing to enforce the Court's orders, and courts have quashed third-party subpoenas seeking to conduct discovery after the deadline. *See, e.g.*, *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 428 (M.D. Fla. 2005) ("Defendants have standing to move to quash or modify the subpoena based on inadequate notice" because, among other things, they have "standing to move to enforce the Court's orders and rules"); *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) (quashing third-party subpoena where plaintiff was seeking to conduct discovery after the deadline); *Marvin Lumber*, 177 F.R.D. at 445 (granting plaintiff's motion to quash third-party subpoenas that had return date after discovery cutoff, citing the importance of case management).

## III.   THE COURT SHOULD AWARD PLAINTIFFS REASONABLE EXPENSES INCURRED IN PREPARING THIS MOTION

Rule 16(f)(1)(C) provides for sanctions if a party "fails to obey a scheduling or other pretrial order." Among other things, "the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance

was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

Rules 26 and 37 are to the same effect. Rule 26(c)(3) provides that Rule 37(a)(5) applies to the award of expenses incurred in seeking a protective order. Rule 37(a)(5), in turn, provides that a court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless (among other things) the opposing party's conduct was substantially justified or other circumstances make an award of expenses unjust.

Plaintiffs request that the Court award them reasonable costs and fees under these rules. Intervenors are necessarily aware that "serving such late discovery requests . . . create[s] a Hobson's choice for the [Plaintiffs and third parties], because [their] response[s] would violate the Scheduling Order." *In re Skyport Glob. Commc'ns, Inc.*, 408 B.R. at 695 (awarding expenses for costs incurred in preparing motion for protective order in response to untimely discovery requests). Indeed, counsel for Plaintiffs alerted Intervenors' counsel before filing the present motion that the discovery sought was untimely, complete with case law support, and requested that Intervenors withdraw the requests. *See* Ex. D. Notably, Intervenors offered no explanation whatsoever for their delay, arguing instead that

the March 8 discovery cutoff is no deadline at all. *Id.* (arguing discovery may continue past the March 8 date). Intervenors' insistence in pursuing their demands despite their unexplained delay is not substantially justified, and no other circumstances would make an award of costs and fees unjust. The Court should therefore award Plaintiffs the expenses they incurred engaging in this motion practice. *See, e.g.*, *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 673 (M.D. Fla. 2008) (awarding attorney's fees and costs for preparing motion for protective order in response to third-party subpoenas with a production date after the discovery cutoff).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

## LOCAL RULE 7.1(C) CERTIFICATION

Pursuant to Local Rule 7.1(C), Plaintiffs' counsel confirm that they complied with the attorney-conference requirement of Local Rule 7.1(B). Undersigned counsel conferred with counsel for Intervenors, Shawn Sheehy, and counsel for Defendants, Joseph Brown, and was advised that Intervenors oppose the requested relief and Defendant takes no position.

## LOCAL RULE 7.1(F) CERTIFICATION

Counsel for Plaintiffs, Fritz Wermuth, Esquire, certifies that this motion contains 4,324 words, excluding caption and certificates.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

/s/ Fritz S. Wermuth
Fritz S. Wermuth
Florida Bar No.: 0184111
KING, BLACKWELL, ZEHNDER
   & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias

- 19 -

Elisabeth C. Frost*
Jacki L. Anderson*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

*Counsel for the Plaintiffs*
*\*Admitted Pro Hac Vice*