# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

NANCY CAROLA JACOBSON,
TERENCE FLEMING, SUSAN
BOTTCHER, PRIORITIES USA, DNC
SERVICES CORPORATION /
DEMOCRATIC NATIONAL
COMMITTEE, DSCC a/k/a
DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE, DCCC a/k/a
DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE,
DEMOCRATIC GOVERNORS
ASSOCIATION, and DEMOCRATIC
LEGISLATIVE CAMPAIGN
COMMITTEE,

No. 4:18-cv-00262-MW-CAS

          Plaintiffs,

    v.

LAUREL M. LEE, in her official capacity
as the Florida Secretary of State,

          Defendant,

and

NATIONAL REPUBLICAN SENATE
COMMITTEE, and REPUBLICAN
GOVERNORS ASSOCIATION,

          Defendant-Intervenors.

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE

INTRODUCTION ...........................................................................1

ARGUMENT .................................................................................2

I.    THERE ARE NO MATERIAL DISPUTES OF FACT ....................2

II.    PLAINTIFFS HAVE STANDING ......................................6

II.    THE COURT HAS AUTHORITY TO ADJUDICATE THIS CASE.................................................................13

III.    THE STATUTE IS UNCONSTITUTIONAL ..................................14

    A.    The Statute Treats Similarly Situated Parties Differently, to Plaintiffs' Persistent Disadvantage .....................................14

    B.    The State's Proffered Interests Cannot Sustain the Statute as a Matter of Law .................................................................20

CONCLUSION ............................................................................23

# TABLE OF AUTHORITIES

CASE                                                                                                  PAGE

*281 Care Committee v. Arneson*,
   638 F.3d 621 (8th Cir. 2011) ...............................................................9

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983).........................................................................13

*Anderson v. Liberty Lobby, Inc*.,
   477 U.S. 242 (1986)...........................................................................2

*Arizona State Legislature v. Arizona Independent Redistricting Commission*,
   135 S. Ct. 2652 (2015).......................................................................8

*Baloco v. Drummond Co*.,
   767 F.3d 1229 (11th Cir. 2014) ...........................................................2

*Bazemore v. Jefferson Capital System*,
   LLC, 827 F.3d 1325 (11th Cir. 2016)....................................................2

*Boustani v. Blackwell*,
   460 F. Supp. 2d 822 (N.D. Ohio 2006) ......................................18, 24

*Brown v. Plata*,
   563 U.S. 493 (2011)...........................................................................9

*Burdick v. Takushi*,
   504 U.S. 428 (1992)........................................................................13

*Chevron Corporation v. Donziger*,
   974 F. Supp. 2d 362 (S.D.N.Y. 2014) ..................................................9

*Clapper v. Amnesty International USA*,
   568 U.S. 398 (2013)...........................................................................8

*Cordoba v. Dillard's, Inc*.,
   419 F.3d 1169 (11th Cir. 2005) ...........................................................2

*Crawford v. Marion County Election Board*,
   553 U.S. 181 (2008).....................................................................18, 23

*Democratic Executive Committee of Florida v. Lee*,
   915 F.3d 1312 (11th Cir. 2019) .........................................................14

# TABLE OF AUTHORITIES

CASE                                                                                    PAGE

*Federal Deposit Insurance Corporation v. Morley*,
  867 F.2d 1381 (11th Cir. 1989) ...........................................................8

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018)........................................................................6

*Graves v. McElderry*,
  946 F. Supp. 1569 (W.D. Okla. 1996)................................................8

*Green Party of New York State v. New York State Board of Elections*,
  267 F. Supp. 2d 342 (E.D.N.Y. 2003) ...............................................18

*Kansas v. Nebraska*,
  135 S. Ct. 1042 (2015).......................................................................9

*LaRoque v. Holder*,
  650 F.3d 777 (D.C. Cir. 2011) ...........................................................8

*Levy v. Miami-Dade County*,
  358 F.3d 1303 (11th Cir. 2004) ..........................................................8

*Libertarian Party of Virginia v. Alcorn*,
  826 F.3d 708 (4th Cir. 2016), *cert. denied Sarvis v. Alcorn*, 137 S.
  Ct. 1093 (2017) ..................................................................................15

*McCullen v. Coakley*,
  573 U.S. 464 (2014)............................................................................9

*McLain v. Meier*,
  637 F.2d 1159 (8th Cir. 1980) .....................................................passim

*Munro v. Socialist Workers Party*,
  479 U.S. 189 (1986)............................................................................19

*New Alliance Party v. New York State Board of Elections*,
  861 F. Supp. 282 (S.D.N.Y. 1994) ..............................................passim

*Obama for America v. Husted*,
  697 F.3d 423 (6th Cir. 2012) ..............................................................19

*Open Homes Fellowship, Inc. v. Orange County*,
  325 F. Supp. 2d 1349 (M.D. Fla. 2004)..............................................23

# TABLE OF AUTHORITIES

**CASE**                                                                 **PAGE**

*Richey v. Tyson*,
   120 F. Supp. 2d 1298 (S.D. Ala. 2000) .................................................8

*Rizzo v. Goode*,
   423 U.S. 362 (1976) ..............................................................................14

*Soltysik v. Padilla*,
   910 F.3d 438 (9th Cir. 2018) ...............................................................18

*Storer v. Brown*,
   415 U.S. 724 (1974) ..............................................................................19

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997) ..............................................................................19

*Women's Emergency Network v. Bush*,
   323 F.3d 937 (11th Cir. 2003) ...............................................................8

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c)(1) ...............................................................................4

Fla. Stat. Ann. § 20.10(1) ...........................................................................17

Florida Statute § 101.151 ...........................................................................22

Florida Statute § 101.151(3)(a) .............................................................1, 15

## INTRODUCTION

Defendants do not proffer any material facts to create a genuine dispute that position bias confers an advantage on first-listed candidates in Florida's elections. Florida Statute § 101.151(3)(a) (the "Statute") confers this advantage on the *class of candidates* who belong to the political party of the last-elected Governor. Because Republicans have won Governor's races for the last 20 years (by increasingly minuscule margins), the Statute operates to the severe injury of Plaintiffs. But even if the Court were to assume that the burden on Plaintiffs was less significant, making the Statute subject to a more deferential standard of review, it still could not survive. None of the interests the Secretary identifies to justify the Statute's distortion of Florida's elections can sustain it as a matter of law, or in light of the undisputed facts.

The vast majority of the arguments in Defendants' responses (the "Responses") (ECF Nos. 138, 141) to Plaintiffs' motion for summary judgment (the "Motion") (ECF No. 116) are recycled from prior motions. Plaintiffs have explained why they cannot be sustained, most recently in opposition to Defendants' motions for summary judgment (ECF No. 142). As for the handful of additional arguments Defendants make, most are variations on their same old, unsupportable themes and are easily disposed of. Plaintiffs have demonstrated they are entitled to summary judgment, and the Court should grant their Motion.

# ARGUMENT

## I.   THERE ARE NO MATERIAL DISPUTES OF FACT

Most importantly, Defendants do not and cannot proffer any evidence to show that the factual question of whether "position bias" skews Florida elections is genuinely in dispute. The Secretary does not address this point at all. Instead, she takes the incredible stance that, if position bias is skewing Florida's elections, it is immaterial, because an inherently unlevel playing field that confers an unfair advantage to the last-elected Governor's party is either not of "constitutional concern," ECF No. 138, at 1, 6, or can be otherwise justified by speculative concerns about voter confusion and administrative difficulties that may arise if the Court were to choose a particular remedy, *id.* at 5-6, 11-13. None of these positions is supportable, but the Secretary's acute focus on them highlights that she does not raise any dispute as to the existence of the built-in bias in Florida's elections.

As for Intervenors, while they claim to "dispute[]" this question, ECF No. 141 at 20, n.12, they fail to cite *any* evidence or facts in support. *See Bazemore v. Jefferson Capital Sys.*, LLC, 827 F.3d 1325, 1333 (11th Cir. 2016) ("'[C]onclusory allegations without specific supporting facts have no probative value' for a party resisting summary judgment.") (quoting *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)); *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (explaining a dispute is not "'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not

create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quoting *Hedberg v. Ind. Bell Tel. Co*., 47 F.3d 928, 931–32 (7th Cir. 1995)) (quotation marks omitted).

Moreover, Intervenors do not deny that their own experts were not asked to and do not offer an opinion on the question of whether ballot order impacts elections, in Florida or elsewhere. ECF No. 116, at 7-8. Nor do they dispute that their experts lack any experience studying ballot order effect and have only reviewed a scant amount of the vast literature on the subject. *Id.* at 7-8, nn.8-9. They also do not dispute that the consensus among those who have studied and published on position bias is that it is real and impacts elections. *Id.* at 5 & n.7.

The *only* thing that Intervenors cite in support of their assertion that this question remains "disputed" is the inapposite decision in *New Alliance Party v. New York State Board of Elections*, 861 F. Supp. 282 (S.D.N.Y. 1994), which Intervenors claim proves that "the academic community has been and remains in a multi-decade debate in the academic literature over whether there is a ballot order effect." ECF No. 141, at 2 n.1; *see also id*. at 20 n.12. But summary judgment is concerned with the evidence in *this* case, not that presented by different parties, litigating a different question, concerning a different statute, in a case decided a quarter-century ago. *See* ECF No. 142, at 12, 14-15 (discussing *New Alliance Party*, which considered claims by minor political party that "tendered no empirical evidence in support of its claims," 861 F. Supp. at 287, but nevertheless sought to be placed in "first tier" of candidates with political parties that had demonstrated they could obtain over 50,000 votes in a gubernatorial election); *see*

*also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by. . . citing to . . . materials *in the record . . . .*") (emphasis added). Moreover, the state of the "debate in the academic literature" in 1994, when *New Alliance Party* was decided, cannot answer the evidentiary question this Court must decide in 2019—one that the Secretary foregoes entirely, and Intervenors would have the Court punt to another judge based on a decision made long ago under very different circumstances.

The existence of position bias in Florida elections is not the only material fact that the Responses leave unrebutted. Similarly undisputed are that:

- For the past 20 years, the Statute has required Republicans be listed first in every partisan election, ECF No. 116, at 3;

- Even after Intervenors' expert Dr. Jonathan Klick piles on a host of other variables that he "imagines" might be important to the inquiry, his calculations show that Republicans in Florida still receive a ballot order advantage of slightly under a percentage point, *id.* at 19-20 (citing ECF No. 112-5, at 9).

- There have been significant numbers of close elections in Florida in recent years, including the last three gubernatorial elections, *id.* at 3-4 (citing ECF No. 112-1, at 127-134), some of which have been decided within a single percentage point, *see* ECF No. 112-1, at 127-34;

- The Republican and Democratic Parties are similarly situated, ECF No. 116, at 12-14;

- More Democratic voters must turn out in support of their candidates to counteract the advantage the Statute confers on Republicans, *id.* at 16-17;

- 4 -

- There is no state interest in conferring an electoral advantage for all candidates sharing the party of the last-elected Governor, *id.* at 21-23, 23 n.13;

- There is no evidence that voters are even aware of ballot order, much less that the current system serves any State interest in avoiding voter confusion (or that the voters would be confused if a rotational system was implemented), *id.* at 27 (citing ECF No. 112-6, at 79:3-19, 97:4-22; ECF No. 112-4, at 120:17-20; and ECF No. 32, ¶ 11);

- There is no evidence that voters are confused when the order of major political party candidates flips after a change in the Governor's party under the Statute, *id*. at 8-9 (citing ECF No. 112-6, at 79:3-19, 97:4-22; ECF No. 32, at ¶ 11);

- Counties in Florida currently send voters a single, composite sample ballot that does not list all of the races voters may see on their ballots, *id*. at 27-28 (citing ECF No. 112-6, at 94:19-95:13; ECF No. 112-8, at 90:11-14, 95:9-16; ECF No. 112-9, at 92:9-93:17);

- Some counties currently notify voters that the composite sample ballot they receive may not match their actual ballot, *id*. at 28 (citing ECF No. 112-6, at 96:5-14);

- There is no evidence that voters in states that employ rotation are any more confused by their ballots than Florida voters, *id*. at 28-29;

- The evidence demonstrates that New Jersey voters are not confused by the ballot order system there, which uses a form of county-by-county rotation, *id*. (citing ECF 112-14, at 13:20-17:2; N.J. Stat. Ann. § 19:14-12 (West 1999 & Supp. 2009));

- Any possible voter confusion could be alleviated through existing channels of voter education and communication, *id.* at 28 (citing ECF No. 112-6, at 96:5-14; ECF No. 112-7, at 170:10-14; ECF No. 112-8, at 98:10-13; ECF No. 112-9, at 104:6-9);

- County-by-county rotation would impose no additional administrative burdens on the counties or the Secretary, *id*. at 24-25 (citing ECF No. 112-6, at 68:4-9; 60:6-61:20, 74:7-21, 82:9-19; ECF No. 112-8, at 51:3-10, 67:13-69:11, 71:9-74:8; ECF No. 112-9, at 119:21-120:18; ECF No. 55-2, at 130-32; ECF No. 56, at 4);

- The voting systems used in Florida could easily accommodate county-by-county rotation of major party candidates, *id*. at 25 (citing ECF No. 112-12, at 37:10-39:15; 42:4-45:7; ECF No. 112-13, at 48:2-54:19);

- By 2020, at least 49 counties will use a voting system (ES&S) that could easily accommodate precinct-by-precinct rotation of major party candidates, ECF No. 142, at 43-45; ECF No. 112-07, at 50-53;

- There is no increased administrative error with a rotational system, ECF No. 116, at 29-30.

## II.   PLAINTIFFS HAVE STANDING

As Plaintiffs have explained, they more than satisfy Article III's standing requirements. *See* ECF No. 142, at 3-10. None of Defendants' rehashed or repackaged arguments provide reason for finding otherwise.

Plaintiffs have previously explained why Intervenors' reliance on *Gill v. Whitford*, 138 S. Ct. 1916 (2018), which required a showing of district-specific harm in a partisan gerrymandering case, is misplaced—when the harm alleged is not district-specific, the evidence to establish standing need not be either. *See* ECF No. 142, at 6. And contrary to Intervenors' assertion, Plaintiffs *have* shown that the Statute has harmed each Plaintiff individually. *See id.* at 4-7 & n.4 (explaining why this case does not raise a "generalized grievance"). Defendants' suggestion that Plaintiffs were not injured by the Statute when they were listed first, prior to 1998,

*see* ECF No. 141, at 10-11, does nothing to change the fact that Plaintiffs presently have a constitutionally sufficient injury to maintain this action. *See* ECF No. 142, at 7-8 & n.4.

Defendants' argument that Plaintiffs must show that ballot order effect has flipped elections in Florida is wrong as a matter of law. *See id.* at 33-34; *see also* ECF No. 116, at 20. But, in any event, Plaintiffs have done so. *See* ECF No. 142, at 33-34; ECF No. 116, at 4, n.6. Defendants' critique of Plaintiffs' experts in this regard is both exceedingly vague and ignores the sheer number of Florida elections that have been decided within the 1% margin of advantage that remains even under defense expert Dr. Klick's calculations. *Compare* ECF No. 112-1, at 127-34 (showing at least 29 elections have been decided within a percentage point over last 40 years), *with* ECF No. 112-5, at 9 (concluding Republicans in Florida receive ballot order advantage of slightly under a percentage point); *see also* ECF No. 116, at 19-20; ECF No. 142, at 27-29. As for Defendants' quibbles with the degree to which Plaintiffs' experts find a ballot order effect in Florida, they are entirely misplaced here, where Plaintiffs move for summary judgment not based on the *specific degree* to which ballot order affects elections in Florida, but on the *undisputed* fact that it *does*.

Similarly, the arguments that Plaintiffs lack standing on traceability or redressability grounds are meritless. *See* ECF No. 142, at 8-10. Plaintiffs' injuries are "directly attributable" to the Statute's mandate that candidates of the Governor's party be listed first, and "a ruling declaring [the Statute] unconstitutional and enjoining [its] enforcement . . . would necessarily redress

[Plaintiffs'] injur[ies]." *Richey v. Tyson*, 120 F. Supp. 2d 1298, 1306 (S.D. Ala. 2000); *see also, e.g.*, *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015); *LaRoque v. Holder*, 650 F.3d 777, 791 (D.C. Cir. 2011).[1] Indeed, Intervenors acknowledge that "this Court . . . [has] the power to declare Florida's Ballot Order Statute unconstitutional and to enjoin its enforcement." ECF No. 141, at 17; *see also* ECF No. 117, at 9-10 (same). Nothing more is required. *See* ECF No. 142, at 8-10.

The Secretary's arguments, *see* ECF No. 138, at 10-14, are similarly flawed. Plaintiffs do not rely on the Secretary's *inaction* to establish standing; it is her *enforcement* of the Statute that causes Plaintiffs' injuries, and enjoining that enforcement would redress the harm. Nor must Plaintiffs bring their claims under a federal statute; they have shown that the Statute violates the U.S. Constitution (to

---

[1] The cases Intervenors cite involved unique circumstances not present here, under which neither declaratory nor injunctive relief would ameliorate the particular injuries at issue. *See Fed. Deposit Ins. Corp. v. Morley*, 867 F.2d 1381, 1389-90 (11th Cir. 1989) (holding borrower would not gain relief if program of financial assistance to lender were held invalid because it would place lender in a failing condition); *Levy v. Miami-Dade Cty.*, 358 F.3d 1303 (11th Cir. 2004) (affirming conclusion that, under circumstances of the case, there was *no* viable remedy to alleviate the injury); *Women's Emergency Network v. Bush*, 323 F.3d 937, 947-49 (11th Cir. 2003) (concluding enjoining statute authorizing distribution of funds from sale of pro-life license plates would not redress pro-choice organization's alleged injury—denial of opportunity to speak—because restricting pro-life speech does not enhance pro-choice organization's ability to speak). A case cited by the Secretary, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), is likewise inapposite. There, plaintiff's "theory of *future* injury [was] too speculative," *id.* at 401, whereas Plaintiffs here have suffered repeated injury in multiple elections and history will repeat itself unless the Statute is struck down.

which state and federal statutes alike must bend). The Court may thus properly declare the Statute unconstitutional and direct the State to correct the violation—as courts routinely do in voting cases, including those involving ballot order statutes. *See, e.g.*, *Graves v. McElderry*, 946 F. Supp. 1569, 1582 (W.D. Okla. 1996); *McLain v. Meier*, 637 F.2d 1159, 1170 (8th Cir. 1980); ECF No. 142, at 8-9.

Contrary to Defendants' suggestion, Plaintiffs are not required to formulate a single perfect injunctive remedy that would completely and entirely address every one of the Statute's ills to proceed with (or prevail on) their claims. *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011) (observing plaintiff "need not show that a favorable decision will relieve [their] *every* injury"). While Plaintiffs have introduced evidence demonstrating that there are at least two ways in which ballot order may be rotated to remedy their injuries (*i.e.*, by precinct or by county), equity is characterized by "a high degree of judicial discretion." D. Dobbs, Law of Remedies 47 (3d ed. 2018); *see also id.* at 26. That discretion "includes the ability to shape equitable relief." *Id.* at 47; *see also id.* at 85. Courts have "substantial flexibility" in crafting equitable decrees tailored to the particular facts of each case. *Brown v. Plata*, 563 U.S. 493, 538 (2011); *see also Kansas v. Nebraska*, 135 S. Ct. 1042, 1058 (2015); *McCullen v. Coakley*, 573 U.S. 464, 492 (2014); ECF No. 142, at 8-9, 42-43. The Constitution does not hold Plaintiffs (or the Court) to a "Goldilocks" standard, whereby they must advocate for (or ultimately enter) the "just right" remedy. *See, e.g.*, *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 639 (S.D.N.Y. 2014) (finding fact that particular equitable decree

"would not provide a complete remedy . . . does not preclude the [c]ourt from granting equitable relief that would solve the problem in part").

Defendants' critiques of possible remedies that the Court might consider should it find a constitutional violation are thus beside the point. Nevertheless, it bears repeating that their ill-conceived attacks on county-by-county and precinct-by-precinct rotation are unsupportable as a matter of law and fact. For reasons already discussed, Defendants' chief complaint about county-by-county rotation—that it would not *completely* neutralize the effects of position bias—assumes a perfect remedy requirement that simply does not exist. But perhaps even more importantly, the evidence shows that county-by-county rotation *would* substantially ameliorate Plaintiffs' injuries. Contrary to Intervenors' claim that there is "no way to randomly equalize population among Florida's counties," ECF No. 141, at 11, Plaintiffs have shown that if the order of the major parties were alternated based on the registered voter population in each county, 53% of voters would receive ballots with one major party listed first and 47% would receive ballots with the other listed first—a near-even split. *See* ECF No. 55, ¶ 2; ECF No. 55-1 (Ex. A). While position bias would remain a factor in races contested within a single district, the direction of the effect would no longer be uniform, remediating injuries Plaintiffs currently suffer all the way down the ticket. This is true not only of the individual candidates who would no longer be perennially relegated to second position merely because they associate with the party whose candidate placed second in the last gubernatorial race, but of all candidates who associate with that party, regardless of their individual position on the ballot, because they share the associational injuries

their party suffers as a whole under the present all-or-nothing system. *See* ECF No. 140-4, ¶ 12 ("Even for those state legislative districts that do not cross county boundaries, the cumulative effect of position bias on the DLCC's overall mission (including especially its mission of electing Democratic majorities in state legislatures) would be drastically reduced. Under a county-by-county rotation system, not *all* Democratic state legislative candidates would be disadvantaged across the board, as they are under the present system.").

Intervenors give themselves away by arguing that a county-by-county rotation system should consider the partisanship of voters in each county, admitting they fear the negative effects of position bias in "politically closer, typically Republican leaning counties," ECF No. 141, at 16. The solution to this problem (and to the specter of future litigation by candidates for down-ballot races, about which both Defendants speculate), is to advocate for a more granular level of rotation, such as by precinct—not to support the continued maintenance of a blatantly discriminatory system that disadvantages one of the two major political parties in every single race.

Defendants also overstate what the evidence shows as to the purported difficulty of implementing precinct-by-precinct rotation. *See* ECF No. 138, at 12; ECF No. 141, at 18-19. It is undisputed that the vast majority of Florida's counties use voting systems that are already capable of rotating ballot order by precinct. *See* ECF No. 142, at 43-45.[2] Those that do not use systems that could be upgraded to

---

[2] The 49 counties that will be using the ES&S voting system by the 2020 election encompass 92.3% of Florida's registered voters. *See*

do so with relative ease. *Id*. Defendants' purported concerns about state certification omit the undisputed fact that that process is entirely within the Secretary's control. To the extent that precinct-by-precinct rotation would present particular difficulties in Miami-Dade (the only county that codes and prints ballots by style instead of by precinct), the Court could craft a hybrid remedy allowing for by-style rotation in Miami-Dade and by-precinct rotation elsewhere. *See* ECF No. 112-07, at 92-94,134-38; ECF No. 112-09, at 123-24; ECF No. 113-8, at 69-70. In any event, courts have repeatedly found that similar claims of administrative burden cannot, as a matter of law, justify unconstitutional legislation that burdens voting rights. *See* ECF No. 116, at 23-25; ECF No. 142, at 38-39.[3] Finally, this Court and others have repeatedly rejected the notion (raised here by Intervenors, *see* ECF No. 141, at 18-19) that an injunction against the Secretary would be ineffective because of involvement of third parties in the elections process. The Secretary has not only the power but the obligation to ensure that any injunction is carried out. *See* ECF No. 142, at 10.

---

https://dos.myflorida.com/media/695246/voting-systems-in-use-by-county.pdf.; https://dos.myflorida.com/elections/data-statistics/voter-registration-statistics/voter-registration-monthly-reports/voter-registration-by-county-and-party/.

[3] Intervenors' reference to the cost of replacing election "machinery" to comply with the ADA, ECF No. 141, at 19, is mysterious; there is no evidence that any county would be required to replace machinery in order to implement precinct-by-precinct rotation, and Intervenors cite none.

## III.    THE COURT HAS AUTHORITY TO ADJUDICATE THIS CASE

Plaintiffs have repeatedly refuted the notion that this case does not raise questions of "constitutional importance," or that there are not manageable judicial standards for its adjudication. Courts that have considered analogous challenges, where plaintiffs argue that a ballot order statute favors one category of similarly situated candidates or parties over another, have universally found those statutes unconstitutional, and *Anderson-Burdick* provides the operative standard to evaluate these claims. *See* ECF No. 142, at 10-24; ECF No. 116, at 11-12, 13-19.

Defendants' latest variation on this theme—that the Elections Clause bars this lawsuit, *see* ECF No. 138, at 13-14; ECF No. 141, at 21—fails as well. While states retain the power to regulate the time, place, and manner of elections, they cannot do so in a way that violates other provisions of the U.S. Constitution— including the First and Fourteenth Amendments. Indeed, the entire premise of *Anderson-Burdick* is that the states' regulatory authority must be balanced against the burdens that election laws "invariably" impose upon voters. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *see also Anderson v. Celebrezze*, 460 U.S. 780, 786-89 (1983). "A court considering a [constitutional] challenge to a state election law" must therefore "weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments . . . against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Burdick*, 504 U.S. at 434 (quotation marks omitted). Applying that test here, the Statute is unconstitutional.

Defendants' vague invocation of federalism is similarly unavailing. *See* ECF No. 138, at 13-14; ECF No. 141, at 17. "[W]hile federalism certainly respects states' rights, it also demands the supremacy of federal law when state law offends federally protected rights." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1331 (11th Cir. 2019). Accordingly, if the Court finds the Statute unconstitutional, it has a duty to strike it down. *Id.* The Secretary's reliance on the *dissent* in *Lee* to argue otherwise is perplexing. This argument *failed* in *Lee*. *Id.* at 1328, 1331. There is no reason why this Court should find it any more convincing here.[4]

## IV.   THE STATUTE IS UNCONSTITUTIONAL

This is a simple case: the Statute is unconstitutional because it treats similarly situated political parties differently, to Plaintiffs' detriment, and none of the interests the State identifies are sufficient to outweigh that burden as a matter of law. Nothing in Defendants' Responses, which repeat arguments previously made and responded to, changes this conclusion.

### A. The Statute Treats Similarly Situated Parties Differently, to Plaintiffs' Persistent Disadvantage

Defendants fail to identify any material factual dispute that would enable the Court to conclude that the Statute does not in fact treat similarly situated parties differently to Plaintiffs' repeated detriment.

---

[4] *Rizzo v. Goode*, 423 U.S. 362 (1976), is not to the contrary. There, the Court cautioned that federalism militated against fashioning prophylactic procedures to minimize misconduct by a handful of state employees when such procedures would have interfered with the internal disciplinary affairs of a state agency. Any relief the Court might order in this case would not interfere with the internal affairs of any state agency. It would, however, make Florida elections decidedly fairer.

As an initial matter, Intervenors' lengthy argument that strict scrutiny does not apply is puzzling. *See* ECF No. 141, at 26-30. Although the case law clearly supports applying heightened scrutiny to this case, *see* ECF No. 116, at 21-22; ECF No. 142, at 34 n.18, Plaintiffs argue they are entitled to summary judgment because the Statue cannot survive even the least stringent level of scrutiny under *Anderson-Burdick*. *See* ECF No. 116, at 21-22.

And while Defendants continue to assert that the Statute is "facially neutral," ECF No. 141, at 24-25; ECF No. 138, at 1, 7, this argument is belied by the Statute's plain language, which explicitly prioritizes "the candidates of the party that received the highest number of votes for Governor in the last election. . . ." Fla. Stat. § 101.151(3)(a); *see* ECF No. 116, at 13-14; ECF No. 142, at 15-16. Thus, Intervenors' citation to *Libertarian Party of Virginia v. Alcorn*, 826 F.3d 708 (4th Cir. 2016), *cert. denied Sarvis v. Alcorn*, 137 S. Ct. 1093 (2017), is badly misplaced. There, in considering a challenge by a third-party candidate who sought to be placed among the first tier of major party candidates on the ballot, the court concluded that Virginia's "three-tiered ballot ordering" system was facially neutral and nondiscriminatory, unlike a system—like the one here—that "*automatically elevate*[*s*]" one party "to the top of the ballot." 826 F.3d at 717 (emphasis added); *see also* ECF No. 142, at 13-14; ECF No. 43, at 12 n.5. Defendants' irrational argument that, under the Florida Statute, each party has an equal opportunity to be listed first, ECF No. 141, at 24-25; *see also* ECF No. 138, at 8 & n.5, similarly cannot be squared with the text or the effect of the Statute, for reasons Plaintiffs

have previously discussed. *See* ECF No. 142, at 1-2, 13-14, 18-19; ECF No. 116, at 18-19.[5]

As for the Secretary's assertion that there is a growing consensus of cases finding ballot order challenges to be of no "constitutional concern," ECF No. 138, at 1, 6, as Plaintiffs have explained, this just is not true. *See* ECF No. 142, at 12-19. To the extent there is a consensus among courts on this question, it is that those systems most similar to the Statute—i.e., they mandate differential treatment of similarly situated major parties—are unconstitutional. *See id*. Defendants' attempts to distinguish those analogous cases are so tortured and illogical that they only serve to further demonstrate that the only logical result is to find the Statute unconstitutional.

For example, the Secretary concedes that ballot order systems that discriminate in favor of "a particular class of candidate," such as "incumbents or candidates from a specific political party," are unconstitutional. ECF No. 138, at 7-8. Yet, *on its face*, the Statute favors "a particular class of candidates"—i.e., *all* who affiliate with the specific political party of the incumbent Governor. *See* ECF No. 116, at 18-19; ECF No. 142, at 16-18. Defendants also agree that systems that give election officials the authority to "list[] candidates from *their* party first" are unconstitutional. ECF No. 138, at 8 n.4; *see also* ECF No. 141, at 28. By arguing that this case is meaningfully different, the Secretary ignores that she was

---

[5] Nor does the fact that the Governor of Florida has been a Democrat in the past make Plaintiffs any less injured today or the Statute any more constitutional. *See* ECF No. 142, at 7 n.4.

appointed to her position "by the Governor" and "serve[s] at [his] pleasure." Fla. Stat. Ann. § 20.10(1). Thus, the Statute not only allows but *mandates* that the Secretary "list[] candidates from [*her*] party first."

As for *McLain v. Meier*, which found unconstitutional a statute that placed first on the ballot all candidates whose political party received the most votes in the last congressional election, 637 F.2d 1159, the Secretary admits it concerned "a ballot order statute like Florida's" and is not "clearly distinguishable." ECF No. 138, at 7-8. But Defendants' arguments that it was wrongly decided, *id.* at 8-9; ECF No. 141, at 28-29, are not well-founded. The Eighth Circuit's decision in *McLain* is entirely consistent with all the other cases that have concluded that statutes that automatically elevate certain types of candidates to the top of the ballot based on past electoral success are unconstitutional. *See* ECF No. 142, at 16-17 (discussing cases).

The Secretary's implication that *only* "incumbent-first" systems can be unconstitutional, ECF No. 138, at 8, is inconsistent with her own admission that statutes that confer a ballot order advantage on a "specific political party" are unconstitutional, *id.* at 7; relies entirely on dicta from the inapposite *New Alliance Party*, *see* discussion *supra* at 3-4; and ignores that the statutes at issue in *McLain* and here are essentially "incumbent-first" statutes that expand their reach to every single candidate within the favored incumbent's party for years at a time. *See* ECF No. 116, at 17-19; ECF No. 142, at 17-18.

Defendants' complaint that *McLain* did not consider the state's asserted interests in avoiding voter confusion "compelling," ECF No. 138, at 8; ECF No.

- 17 -

141, at 28-29, demonstrates *not* that *McLain* was wrongly decided, but that it is consistent with a long line of cases concluding that speculative concerns about, e.g., voter confusion and election integrity cannot justify disparate treatment implicating voting rights. *See Soltysik v. Padilla*, 910 F.3d 438, 448-49 (9th Cir. 2018) (rejecting argument that a state can justify voting regulation with a "merely 'speculative concern of voter confusion'") (citation omitted); *Boustani v. Blackwell*, 460 F. Supp. 2d 822, 826 (N.D. Ohio 2006) (holding statute unconstitutional when state "speculated" an interest in preventing voter fraud); *Green Party of N.Y. State v. N.Y. State Bd. of Elections*, 267 F. Supp. 2d 342, 359 (E.D.N.Y. 2003) (finding alleged "interest in preventing voter confusion" "unpersuasive" based on what voters would know and understand); *see also* ECF No. 142, at 35-41.

The Secretary's view that it is legally erroneous not to automatically credit *any* claim that a statute promotes an interest in preventing voter confusion, moreover, ignores the Supreme Court's admonition that, when a plaintiff challenges an election law as unconstitutional, "[h]owever slight" the injury to the plaintiff may appear, the law must still "be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman v. Reed*, 502 U.S. 279, 280 (1992)). There is no "litmus test" immunizing certain types of laws from scrutiny (nor are there certain recitations of interests that automatically make them immune). *Id.* at 190. In each case, the Court must "make the 'hard judgment' that our adversary system demands." *Id.* The Eighth Circuit did so in

*McLain* and concluded that the ballot order statute there—which the Secretary admits is functionally indistinguishable from the Statute here—was unconstitutional. This Court should do the same.[6]

For the same reason, the Court can easily dispose of Intervenors' argument that because the Statute neither prevents Plaintiffs from voting nor makes it more difficult to vote, it is per se constitutional. ECF No. 141, at 25. As Plaintiffs explained when the Secretary made a similar argument, *Anderson-Burdick* is not so limited. *See* ECF No. 142, at 20; *see also Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012) (explaining *Anderson-Burdick* applies in a "broad range of voting rights context"). *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)—cited by Intervenors—does not include such a limiting proposition. *See* ECF No. 142, at 13. And *Storer v. Brown*, 415 U.S. 724, 733 (1974), and *Munro v. Socialist Workers Party*, 479 U.S. 189, 190 (1986), simply upheld requirements that applied equally to all similarly situated minor parties or independent candidates.[7] Nor does the fact that Plaintiffs have not simultaneously challenged ballot order systems in New York and Pennsylvania somehow immunize the

---

[6] *New Alliance Party* does not alter this conclusion. *See* ECF No. 138, at 8-9. The voter confusion concerns at issue in that case centered on a minor political party plaintiff's attempt to upend the tiered party ballot order system, 861 F. Supp. at 298, unlike here, as Plaintiffs have previously noted. *See* ECF No. 142, at 13-15.

[7] Somewhat ironically, *Storer* also pre-dates both *Anderson* and *Burdick*, a point Defendants both make in trying to distinguish *McLain*, ECF No. 138, at 8; ECF No. at 141, at 29 n.15, although they fail to cite any authority suggesting that cases that pre-date those decisions are no longer persuasive.

Statute from constitutional attack (as Intervenors seem to urge, ECF No. 141, at 27 n.14), for reasons previously explained. *See* ECF No. 142, at 7-8, n.4.

Given the above, it is no wonder Defendants resort to mischaracterizing Plaintiffs' position in an effort to avoid summary judgment. ECF No. 138, at 9. But, contrary to Defendants' assertions, Plaintiffs have never argued that any votes cast are invalid, nor do they seek retroactive relief—they simply ask that, going forward, the undisputed automatic bias caused by the Statute that skews Florida's elections be enjoined. *See* ECF No. 142, at 24 n.11. Nor do Plaintiffs argue, as the Secretary contends, ECF No. 138, at 7, that major political parties have stronger constitutional rights than minor parties. Plaintiffs' point is that major political parties are *not similarly situated* to minor political parties, which is well-established, and, under existing legal principles, renders the Statute unconstitutional. *See* ECF No. 116, at 26-27; ECF No. 142, at 13-19.

## B. The State's Proffered Interests Cannot Sustain the Statute as a Matter of Law

Plaintiffs have repeatedly addressed and disposed of almost all the state interest arguments Defendants rehash here. First, the Secretary argues that Florida has an interest in defending its statute's constitutionality, ECF No. 138, at 4-5, but this argument fails under both law and logic, as previously explained. *See* ECF No. 142, at 35. Second, the State's asserted interest in ballot uniformity cannot be reconciled with the current proliferation of ballot styles in use not just across Florida, but even within precincts. *See id*. at 35-36.

Next, the Secretary argues that the State's interest in ensuring the integrity of Florida elections justifies the Statute, but this position, too, is not well-founded. For one, the Secretary never explains how skewing elections in favor of the Governor's party promotes elections integrity (one might logically conclude it does exactly the opposite). Nor does the case upon which the Secretary relies provide reason for finding in her favor. *See* ECF No. 138, at 5 (citing *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), a wholly inapposite decision about a law that forbade political party governing bodies from endorsing or opposing candidates in primary elections). As with the last time Defendants made this argument, the Secretary cannot cite to any evidence that actually supports her position, relying instead on bare speculation about how voter confusion might result, and generalities about the importance of voters having confidence in the electoral process. *See id.* As Plaintiffs have previously pointed out, these are not the types of "evidence" that can support a finding that the State's interest justifies the burden on Plaintiffs, *see* ECF No. 142, at 36-39, and they similarly cannot provide reason to deny Plaintiffs' motion for summary judgment, *see supra* at 2-3. In sum, none of the evidence cited by the Secretary establishes a relationship between the State's interest in elections integrity and the Statute.

The same is true of Defendants' argument that the Statute promotes the State's interest in preventing voter confusion—an argument made repeatedly before, which Plaintiffs have squarely rebutted. *See, e.g.*, ECF No. 30, at 24-27; ECF No. 116, at 25-29; ECF No. 142, at 39-41. Defendants fail to cite any evidence in support of their claim that voters would be confused if Florida adopted

a different ballot order system. Furthermore, Defendants do not proffer any evidence that would rebut any of the evidence cited by Plaintiffs in their Motion establishing facts related to the non-existence of voter confusion (and the ease in addressing any legitimate concerns about the risks of such confusion), as set forth above, *see supra* at 4-5.

Seeking to manufacture a basis for asserting voter confusion, Intervenors falsely assert that Plaintiffs request random ballot placement that would "risk[] 'requiring voters to decipher lengthy multi-office, multi-candidate ballots in order to find their preferred candidates.'" ECF No. 141, at 31 (quoting *Alcorn*, 826 F.3d at 719). As Plaintiffs have clearly and repeatedly affirmed since the preliminary injunction stage, this action challenges only the provision of Florida Statute § 101.151 related to the ordering of major political parties, and any remedy sought would necessarily list candidates in a consistent order down any given voter's ballot. *See* ECF No. 30, at 7 n.3; ECF No. 116, at 26-27; ECF No. 142, at 39. Thus, it would be just as easy as it is now for voters to find their preferred candidates on the ballot.

Bereft of evidence of a connection between the Statute and any legitimate state interest, the Secretary states that she does not need any evidence to justify the State's interests. ECF No. 138, at 5. This argument relies entirely on *New Alliance Party*, which involved a different challenge to a different statute by parties who were not at all similarly situated. *See supra* n.5. Whether the court in that case was correct to reach such a conclusion is not a question this Court need grapple with; that the Secretary could find no other citation to support this audacious position,

however, speaks volumes. State interests, even facially legitimate ones, are not incantations that the Secretary can simply utter to make a statute constitutional. *See Crawford*, 553 U.S. at 190; *Open Homes Fellowship, Inc. v. Orange Cty.*, 325 F. Supp. 2d 1349, 1360 (M.D. Fla. 2004). Defendants' failure to establish (rather than merely assert) any state interest that can justify the burdens imposed by the Statute (even if the Court presumes they are slight) renders it unconstitutional.[8]

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for summary judgment.

## LOCAL RULE 7.1(F) CERTIFICATION

Counsel for Plaintiffs, Fritz Wermuth, Esquire, certifies that this motion contains 6,311 words, excluding the case caption, tables of contents and authorities, and certificate of service.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

---

[8] The Court should also reject Intervenors' argument that the Statute reflects a policy choice that this Court should not disturb. *See* ECF No. 141, at 32-33. States can make unconstitutional policy choices as well constitutional ones; they are still subject to judicial scrutiny.

Respectfully submitted,

/s/ Frederick Wermuth
Frederick S. Wermuth
Florida Bar No.: 0184111
KING, BLACKWELL, ZEHNDER
     & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Jacki L. Anderson*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

*Counsel for the Plaintiffs*
*Admitted Pro Hac Vice*