UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| NANCY CAROLA JACOBSON, TERENCE FLEMING, SUSAN BOTTCHER, PRIORITIES USA, DNC SERVICES CORPORATION / DEMOCRATIC NATIONAL COMMITTEE, DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE, DCCC a/k/a DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE, DEMOCRATIC GOVERNORS ASSOCIATION, and DEMOCRATIC LEGISLATIVE CAMPAIGN COMMITTEE,<br><br>   Plaintiffs,<br><br> v.<br><br>LAUREL M. LEE, in her official capacity as the Florida Secretary of State,<br><br>   Defendant,<br><br>and<br><br>NATIONAL REPUBLICAN SENATE COMMITTEE, and REPUBLICAN GOVERNORS ASSOCIATION,<br><br>   Defendant-Intervenors. | No. 4:18-cv-00262-MW-CAS |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO SECRETARY'S MOTION
FOR STAY PENDING APPEAL**

1

As the Court correctly found, "the issues presented in this case are not novel." ECF No. 202, at 9. "In a jurisprudential sense, they are not even particularly challenging." *Id*. Nevertheless, the Secretary of State seeks a stay pending appeal that, if granted, is highly likely to have the effect of ensuring that yet another one of Florida's general elections will take place under an unconstitutional and flatly unfair ballot order scheme "which systematically advantages candidates of one party and disadvantages candidates of another party to a statistically significant (and potentially outcome-determinative) degree." *Id*. at 64. The Court found that, "*even under the rational-basis standard*," Defendants failed to offer "relevant, legitimate interests which the Florida Legislature could rationally conclude justify burdening Plaintiffs' rights as" the Ballot Order Statute does. *Id.* (emphasis added). Because the Secretary cannot meet the heavy burden required for the extraordinary relief requested, this motion should be denied.

## LEGAL STANDARD

A party seeking a stay must demonstrate each of the following: (1) they have a strong likelihood of prevailing on the merits of the appeal; (2) they will suffer irreparable injury unless the stay is granted; (3) no substantial harm will follow to other interested persons if the stay is granted; and (4) the stay will not result in any harm to the public interest. *Fortune v. Molpus*, 431 F.2d 799, 804 (5th Cir. 1970)[1]; *see also Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). A stay under Federal

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

Rule of Civil Procedure 62(c)—which is what the Secretary implicitly seeks, even if she does not cite the Rule—is considered "'extraordinary relief' for which the moving party bears a 'heavy burden.'" *Gay Lesbian Bisexual All. v. Sessions*, 917 F. Supp. 1558, 1561 (M.D. Ala. 1996) (citation omitted). After all, a stay pending appeal "is an intrusion into the ordinary process of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation omitted). In this case, the Secretary's motion is easily rejected for failure to meet these standards.

## ARGUMENT

**I.     The Secretary is unlikely to succeed on her appeal.**

The Secretary's motion largely glosses over the first (and arguably most important) factor that she must satisfy in order to justify a stay pending appeal: that she demonstrate that she has "*a strong likelihood of success* on appeal." *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987) (emphasis added). Aside from a brief discussion of an entirely distinguishable case (addressed further below), the Secretary does not even bother to identify the specific issues she intends to press on appeal, much less explain why she believes she has a strong likelihood of prevailing on them. Instead, the Secretary states that she "will not cover ground already tread in the Final Order or in prior decisions of this Court" and simply "adopts" her prior arguments here. ECF No. 207, at 2 (cross-referencing ECF No. 199 (Secretary's proposed post-trial order)). As a result, it would be appropriate to conclude that the Secretary has abandoned these arguments, at the very least for the purposes of the present motion for stay. *Cf. Sepulveda v. U.S. Atty. Gen.*, 401

3

F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."); *United States v. Day*, 405 F.3d 1293, 1294 n.1 (11th Cir. 2005) ("This court has a well-established rule that issues and contentions not timely raised in the initial brief are deemed waived or abandoned.").

But in any event, a vague incorporation by reference to a separate 37-page brief previously submitted to the Court, upon which the Secretary plainly did not prevail, *see generally* ECF No. 202, cannot possibly suffice to satisfy the requirement that she demonstrate she has a strong likelihood of succeeding on the merits of her appeal. The same is true of the Secretary's reliance on dicta in *New Alliance Party v. New York State Board of Elections*, 861 F. Supp. 282 (S.D.N.Y. 1994), a district court case from another circuit that is now a quarter-century old, and that has been discussed *ad nauseum* in the parties' briefing. *New Alliance* is not only *not* authoritative and highly distinguishable, it provides no reason to expect that the Secretary is likely to convince the Eleventh Circuit to overrule this Court's considered judgment on the extensive record put before it in this case. In contrast, the plaintiff in *New Alliance*—a minor (and thus not similarly-situated) political party—"tendered *no* empirical evidence in support of its claims," but still sought to be placed in the "first tier" of candidates on ballots, a position reserved for political parties that could obtain over 50,000 votes in a gubernatorial election. *Id*. at 295.[2]

---

[2] Defendant's argument that "[v]oters have no constitutional right to a wholly rational election," ECF No. 207, at 3 (quoting *New Alliance Party*, 861 F. Supp. at

When the Eleventh Circuit reviews the Court's careful and thoughtful decision in *this* case on the evidence submitted in *this* litigation, it will have before it an extensive factual record, about which this Court's findings will be reviewed under the highly deferential clear error standard. This includes an overwhelming store of the very type of empirical evidence that the district court in *New Alliance* found the plaintiff in that case failed to proffer, including the testimony of three highly qualified expert witnesses, the conclusions of each of whom the Court repeatedly found to be "reasonable, reliable, and credible" "after close and attentive scrutiny." ECF No. 202, at 32 (discussing conclusions of Dr. Jon Krosnick); *see also id*. at 34, 44, 47 (same); *id*. at 40, 44-45, 47 (discussing conclusions of Dr. Jonathan Rodden); *id*. at 44-45, 47 (discussing conclusions of Dr. Paul Herrnson).

It is against this backdrop, after observing (and at times taking part in the questioning in) hours upon hours of testimony, and reviewing hundreds upon hundreds of pages of evidence, that the Court found that Plaintiffs proved that the Ballot Order Statute has given first-listed candidates on Florida's general ballots—

---

295), plainly distorts both Plaintiffs' constitutional claim, *see, e.g.*, ECF No. 201-1, at 36 -37 ("It is the *way* in which the advantages (and commensurate disadvantages) of the ballot order effect are distributed between the two major political parties that is the crux of the constitutional burden here."), and this Court's holding, ECF No. 202, at 16, 46, 61 ("Florida's ballot order statute is not neutral; instead, it affects Plaintiffs' rights in a politically discriminatory way."); *see also Conservative Party v. Walsh*, 818 F. Supp. 2d 670, 676 (S.D.N.Y. 2011) (finding *New Alliance Party* court's conclusion that the windfall vote was not of a constitutional concern "inapposite" when plaintiffs' asserted "right to be free from unabashed discrimination in the process of determining ballot order'").

all candidates of the last-elected Governor's party—an average advantage of five percentage points. *Id*. at 45. In light of "Florida's history of election results in which the margin of victory or defeat is less than three to five percentage points," the Court correctly found that the Ballot Order Statute had "impacted Plaintiffs' First and Fourteenth Amendment rights by systemically allocating that small but statistically significant advantage to Republican candidates in elections where the last-elected governor was a Republican, just as it awarded that advantage to Democrats in elections when Florida's last-elected governor was a Democrat." *Id*. at 45-46. In other words, the Court found that "Florida's ballot order statute systemically awards a material advantage to candidates affiliated with the political party of Florida's last-elected governor solely on the basis of their party affiliation, and therefore systemically disadvantages other candidates on the basis of their party affiliation." *Id*. at 46.

The Court then correctly applied the *Anderson-Burdick* balancing test to find that the Secretary had not proffered a state interest that could justify the state's systemic favoritism of candidates who share their political affiliation with the last-elected governor. Because "Florida's ballot order scheme is not a neutral, nondiscriminatory restriction on Plaintiffs' voting rights, and the burden it imposes is significant," the Court determined that heightened scrutiny was appropriate. *Id*. at 62. However, the Court ultimately held that even if the Ballot Order Statute were subject to *Anderson-Burdick's* lowest level of scrutiny, it still would not survive, because Defendants had presented no valid interest in maintaining the law. *Id*. at

63.³ In the present motion, the Secretary argues that the state's interest is in maintaining the status quo. *See, e.g.*, ECF No. 207, at 4. Of course, that is not a legitimate government interest in and of itself. If it was, every law—however arbitrary or discriminatory against an unprotected class—would withstand judicial scrutiny. It would render rational basis review nugatory.

For all of these reasons, the Secretary has failed to establish that she has any likelihood, much less a strong likelihood, of prevailing on her appeal on the merits in this case. For that reason alone, her motion for a stay should be denied.

## II. The Secretary will not be irreparably harmed if the Court denies her motion for stay pending appeal.

The Secretary has also failed to demonstrate that she will be irreparably harmed if a stay is not issued while she pursues her appeal. In an attempt to meet her burden on this element, the Secretary leads with the assertion that the state will be irreparably harmed because there is *always* irreparable harm when a state cannot enforce its existing statutes, citing *New Motor Vehicle Board of California v. Orrin W. Fox, Co.*, 434 U.S. 1345 (1997) (Rehnquist, J., in chambers), *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, J., in chambers), and *Veasey v. Perry*, 769 F.3d 890 (5th Cir. 2014). *See* ECF No. 207, at 4.

---

³ Indeed, many of the justifications that the Secretary promoted were "not quite on point," because they did not justify the particular ballot order scheme at issue—i.e., one that systemically favored candidates of a single political party—but rather explained why states have interests in ballot order statutes more generally. *Id*. at 51.

Putting aside for a moment the fact that two out of these three authorities are "in-chambers opinions" written by a single justice of the U.S. Supreme Court that themselves have no precedential value, *see* Michael Abramowicz & Maxwell Stearns, Defining Dicta, 57 Stan. L. Rev. 953, 1010 (2005) ("Actions by single Justices are generally not considered to have precedential value . . . ."); *see also Stanfield v. Brookshire Grocery Co.*, 761 F. Supp. 29, 30 (W.D. La.), *aff'd*, 949 F.2d 1158 (5th Cir. 1991) ("The lone opinion of Justice Harlan is a view of one former Justice and does not carry the precedential weight of a United States Supreme Court opinion."); *Territorial Ct. of Virgin Islands v. Richards*, 674 F. Supp. 180, 181 (D.V.I. 1987) ("Moreover, since [Justice Rehnquist] was sitting as a Circuit Justice, his decision does not carry the precedential value of an opinion of the United States Supreme Court."), none actually stand for the proposition that enjoining the enforcement of a law is an irreparable harm in and of itself. Rather, in each case, the opinion's author made clear that the state suffered harm because the injunction at issue in each case prevented it from satisfying a clearly legitimate governmental interest. Thus, in *New Motor Vehicle Board of California*, 434 U.S. at 1351, the injunction in question prevented the state from satisfying its legitimate interest in examining car dealership relocations to protect dealers from manufacturers; in *Maryland*, 567 U.S. at 1301, the injunction prevented the state from satisfying its legitimate interest in collecting DNA to be used as a tool for investigating unsolved crimes; and in *Veasey*, where the injunction was issued only nine days before an election, it prevented the state from satisfying its legitimate interest in facilitating the election, 769 F.3d at 895-96. In this case, on the other

hand, the Secretary contends that she will be irreparably harmed by the mere fact that she cannot enforce a statute that the Court has not only found to be unconstitutional, but fails to satisfy even rational basis review. *See* ECF No. 202, at 63. Indeed, even in her motion, the Secretary fails to identify a legitimate state interest in the statute that could possibly be hindered by its injunction. *See* ECF No. 207, at 4.

The Secretary also claims that she will suffer irreparable harm because of a conundrum that she claims the Court's Opinion puts her in. Specifically, the Secretary claims that a stay is necessary because if the Florida Legislature acts to remedy the constitutional violation—which the Secretary has heretofore urged is the only appropriate solution because it defers to the Legislature—that action will moot the Secretary's appeal; however, if the Legislature does not act, the Secretary will have to fill in the gaps, something she is afraid might subject her to challenge in the state courts. *See* ECF No. 207, at 5-8.

This conundrum is largely imagined and these supposed harms are speculative at best, and highly contingent upon both the speed by which the Court of Appeals disposes of this appeal, as well as the activities of other third parties, including the members of the Florida Legislature. Plaintiffs also do not read the Court's Opinion to require the Secretary to craft a new ballot ordering system. Rather, the Court appropriately offered the Florida Legislature an opportunity to replace the Ballot Order Statute with a constitutional ballot ordering system. *See* ECF No. 202, at 70-71.

But even if the risk of these harms were real, the answer is not to issue a stay (and continue to hold Florida's elections under an unconstitutional ballot order system), but to simply modify the injunction to provide a date certain (e.g., March 20, 2020, the end of the next legislative session) by which if the Legislature has not acted, the Court will issue an interim remedy. This is done all the time in elections cases. *See, e.g.*, *United States v. Brown*, 561 F.3d 420 (5th Cir. 2009) (holding that where political party's county executive committee engaged in racially motivated manipulation of the electoral process, the district court did not abuse its discretion in appointing a referee-administrator to organize party's county primary elections and limiting defendants' role in supervising future primary elections); *Obama for Am. v. Husted*, No. 2:12-CV-636, 2014 WL 2611316, at *5 (S.D. Ohio June 11, 2014) (ordering Secretary of State to set uniform and suitable in-person early voting hours for all eligible voters for the three days preceding all future elections); *United States v. Berks Cty., Pennsylvania*, 277 F. Supp. 2d 570 (E.D. Pa. 2003) (prohibiting English-only elections in the City of Reading, ordering defendants to recruit and train persons to serve as bilingual poll officials or interpreters, and authorizing the appointment of federal examiners to serve through 2007). Indeed, as this Court has already stated, "[c]ourts have broad discretion to fashion equitable relief which is appropriate to the circumstances of the case in question." ECF No. 202, at 67. An interim remedy adopted by the Court, therefore, would be wholly appropriate in the "circumstance[]" that the Legislature is unable or unwilling to adopt a constitutional ballot ordering system in time for the November 2020 elections.

In sum, the Secretary has not met her burden of demonstrating that, in the absence of a stay, she would suffer irreparable harm.

## III. The issuance of a stay would substantially injure Plaintiffs.

While the Secretary would not suffer irreparable harm if her motion for stay is *denied*, there can be no serious question that Plaintiffs would be substantially injured if the motion to stay is *granted*. This Court has already found that the Ballot Order Statute "imposes a burden on Plaintiffs' First and Fourteenth Amendment rights which, although numerically small, is significant in both the statistical sense and in qualitative terms," and that Plaintiffs face "a real and immediate threat that, absent equitable relief from this Court, they will be wronged again." ECF No. 202, at 63, 65-66. The Secretary's only response to this is that, since we can't know which elections will be close and precisely by how much, it is possible the Ballot Order Statute won't be sufficient to impact actual election results in 2020. *See* ECF No. 207, at 9. The Secretary's shrugging speculation that Plaintiffs may get lucky and dodge a bullet in the next round of elections, notwithstanding the voluminous record evidence regarding the magnitude and significance of the name order effect and the context of Florida's election history, *see* ECF No. 202, at 45-46, only illustrates the "real and immediate" threat the Ballot Order Statute imposes and the irreparable harm Plaintiffs face if the injunction is stayed.

Moreover, by the Secretary's logic, were this Court to issue a stay and the Court of Appeals to affirm this Court's order in the weeks or months leading up to

11

the November election, implementation of a new ballot ordering system at *that* point would "risk . . . chaos." ECF No. 207, at 6; *see also* ECF No. 44, at 17-28. According to the Secretary's submission, the constitutional and electoral injuries to Plaintiffs should not be remedied in the November 2020 elections, regardless of what the Court of Appeals determines regarding the constitutionality of the Ballot Order Statute. The Secretary's position not only highlights the irreparable harm a stay would impose on Plaintiffs, it also illustrates the equities of providing a date certain by which this Court would adopt an interim ballot order absent legislative action, *see supra* at 9. Were this Court to do so, Plaintiffs would be assured that a more equitable ballot order system would govern the 2020 elections, and the State would have sufficient notice to implement a new ballot ordering system in preparation for those elections.[4]

## IV.   The public interest lies in denying the motion for stay.

The public interest is always "served when constitutional rights . . . are vindicated," *Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1319 (S.D. Fla. 2014), specifically when the constitutional right at issue is the right to vote, *see League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012); *Fla. Democratic Party v. Detzner*, No. 4:16CV607-MW/CAS, 2016 WL 6090943, at *8 (N.D. Fla. Oct. 16, 2016). Indeed, "[a]ny potential hardship [to the state]

---

[4] The Secretary does not provide any argument here that a remedial ballot ordering system (whether adopted by the Legislature or the Court) would necessarily be difficult to implement regardless of what that system is, or that the State would be unable to revert back to the current ballot ordering scheme in the event this Court's order is affirmed.

imposed by providing the same opportunity . . . for [] voters pales in comparison to that imposed by unconstitutionally depriving those voters of their right to vote and to have their votes counted." *Id*. Such is the situation here: if the Secretary's motion for a stay is granted and the ballot order statute remains in effect, Plaintiffs and the millions of members of Florida's electorate that associate with a political party other than the Republican Party must compete and vote on a starkly uneven playing field under a system that threatens and delegitimizes the very premise of representational government. The Secretary, on the other hand, will face little to no additional administrative burdens if her motion to stay is denied and Florida's elections are conducted under a more equitable ballot order system. Current software systems make changing the ballot order as simple as a few mouse clicks, and supervisors of elections must already routinely create multiple ballots within their assigned counties, *see* T. at 459, 591-92.

Voting is, indeed, "the beating heart of democracy." *League of Women Voters of Fla., Inc., v. Detzner*, 314 F. Supp. 3d 1205, 1215 (N.D. Fla. 2018); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1315 (11th Cir. 2019). Granting the Secretary's motion to stay would result in another election that not only abridges individuals' right to vote but also compromises the democratic ideals fundamental to the public interest.

## CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for stay pending appeal. In addition, Plaintiffs suggest

that the Court modify the injunction to provide a date certain by which if the Legislature has not acted, the Court will enter an interim remedy.

## LOCAL RULE 7.1(F) CERTIFICATION

Counsel for Plaintiffs, Fritz Wermuth, Esq., certifies that this motion contains 3,446 words, excluding the case style and certificate of service.

Respectfully submitted,

/s/*Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No.: 0184111
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias
Elisabeth C. Frost*
Jacki L. Anderson*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP

>1201 Third Avenue, Suite 4900
>Seattle, WA 98101-3099
>Telephone: (206) 359-8000
>Facsimile: (206) 359-9000
>akhanna@perkinscoie.com
>
>*Counsel for the Plaintiffs*
>*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 21, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>/s/*Frederick S. Wermuth*
>Frederick S. Wermuth
>Florida Bar No.: 0184111